# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KRAUSE,<br><br>    Petitioner,<br><br>    v.<br><br>TARA KRAUSE,<br><br>    Respondent. | Case No. 1:21-cv-01706-JLT-SAB<br><br>ORDER SETTING FINAL BRIEFING AND EVIDENTIARY HEARING SCHEDULE<br><br>**Motion Re Issue of In-Person Testimony:**<br>Filing:          April 15, 2022<br>Opposition:   April 22, 2022<br>Hearing:      April 27, 2022, at 10:00 a.m. in Courtroom 9 (SAB)<br><br>**Final Evidentiary Hearing Brief:**<br>Filing:          May 18, 2022<br><br>**Evidentiary Hearing Dates:**<br>Beginning: May 25, 2022, at 9:00 a.m. in Courtroom 9 (SAB) (3 days)<br>*In Camera* Hearings: To Be Determined |

## I. INTRODUCTION

Currently before the Court is Petitioner Michael Krause's Verified Petition for Return of Children to Petitioner ("Petition") brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention"), and the International Child Abduction Remedies Act ("ICARA"), Pub. L. No. 100-300, 102 Stat. 437 (1988) (codified as amended at 22 U.S.C. § 9001 *et seq.*), which implements the Convention. See Radu v. Shon, 11 F.4th 1080, 1084–85 (9th Cir. 2021). This Court conducted a hearing on March 30, 2022, to discuss the need for evidentiary hearings and other issues related to adjudication of this matter.

1

Counsel Richard Min, Michael James Kalanta, and Savannah C. Wadsworth, appeared by video for Petitioner Michael Krause ("Petitioner"). Counsel Drexwell M. Jones appeared by video for the Respondent Tara Krause ("Respondent"). This matter has been referred to the undersigned for the issuance of findings and recommendations or other appropriate action pursuant to 28 U.S.C. § 636.[1]  (ECF No. 17 at 3.)

## II.     JURISDICTION AND VENUE

This Court has jurisdiction and venue is proper. This Court has jurisdiction under 22 U.S.C. § 9003(a) and 28 U.S.C. § 1331. Venue is proper because the parties' children, and the Respondent, are residing in Merced, California, within the Eastern District of California.

## III.     EVIDENTIARY HEARINGS AND *IN CAMERA* PROCEDURES

An evidentiary hearing will begin on **Wednesday, May 25, 2022**, at **9:00 a.m.** before United States Magistrate Judge Stanley A. Boone in Courtroom 9. The parties estimate the primary presentation of evidence and witnesses will take three (3) days.

Additional *in camera* hearings with the parties' children may be held at that time or shortly after the close of the primary evidentiary hearings, and the Court and parties will determine the need for and scheduling of such *in camera* hearings at that time. Further, the parties shall either stipulate to proposed procedures, or submit their respective positions as to proposed procedures for the holding of such *in camera* proceedings within their final briefs, that as noted below, are due **on or before May 18, 2022**. Such proposed procedures shall include discussion of topics including but not limited to: who shall be present with the children (parents, counsel, therapist, experts), where the interviews will occur (in the Courtroom, the Judge's

---

[1] The order of referral specified that "[i]n the context of this referral, the magistrate judge may refine or expand upon this order to show cause, call for further briefing, set a hearing date in accordance with his calendar, define the issues to be presented at any hearing, and take all steps necessary to adjudicate this matter consistent with 28 U.S.C. § 636." (ECF No. 17 at 3.) The Court additionally notes that the Ninth Circuit has addressed a party's objection to referring a petition for the return of children to a magistrate judge for the issuance of findings and recommendations, and held such referral to be proper, including the magistrate judge's holding of an evidentiary hearing, and found the referral to be in accordance with the requirement of an expeditious adjudication under Hague Convention cases. See Holder v. Holder, 392 F.3d 1009, 1021 (9th Cir. 2004) ("His complaint is that the district court should have conducted the evidentiary hearing, not the magistrate judge, and that the hearing should have been accomplished in a more expeditious fashion . . . The district court's invocation of the magistrate judge's assistance was firmly rooted in statutory authority . . . No consent is required in these circumstances . . . The district court's approach fully complied with the statutory requirements in using the magistrate judge's assistance in this case.").

1 personal chambers, or an alternative office located in the Courthouse, such as the conference
2 rooms used for settlement conferences), timing parameters or scope of the interview, and
3 whether counsel or parties will be permitted to ask the children questions or request the Judge to
4 ask certain questions, either before or during the interviews.

### IV. IN PERSON AND VIDEO TESTIMONY

All witnesses shall be present in person to give live testimony. However, the parties may agree by stipulation to allow a witness to appear by video, with adequate technological procedures in place so that the Court and all parties and counsel can hear, understand, and direct questions to the witness in an efficient and clear manner. Any witness that will appear by video shall be advised that although they are appearing remotely they are appearing in court and shall conduct themselves accordingly. There shall be no person present during the testimony other than counsel if the person is represented. Nor is the witness to use notes to testify nor shall they have notes or aides to view or refresh their memory, unless and until the proper evidentiary foundation is laid to review and/or refresh such memory. The Court may require a visual review of the testifying area prior to and/or during the taking of testimony. Accordingly, any witness appearing by video shall appear in a format complying with these requirements, and the Court is not inclined to continue any hearing or witness testimony due to technical or other related issues.

Any motion concerning a dispute over whether any witness shall be allowed to testify via video rather than in-person shall be filed on or before **April 15, 2022**. Any opposition to the motion shall be filed on or before **April 22, 2022**. Any hearing on such motion shall be heard on **April 27, 2022**, in Courtroom 9.

### V. UNDISPUTED AND DISPUTED FACTS[2]

The parties have submitted a joint statement containing facts stipulated between the parties to be undisputed, as well as a set of disputed facts from each party. (ECF No. 31.) Herein the Court may make non-substantive changes to the text of the facts to correct non-

---

[2] As indicated below, any party may submit objections to this order. Given the Court is now holding evidentiary hearings, such objections may include any objections to the Court now accepting these facts to be undisputed moving into the evidentiary hearing. Additionally, the parties may further stipulate that certain disputed facts are now to be considered undisputed.

substantive typographical errors.

**A.    The Parties' Undisputed Facts**

1. Michael Krause and Tara Krause grew up in California.
2. Michael Krause attended UCLA for college.
3. The parties met in California in 2005.
4. Michael Krause has not lived in California since 2005.
5. The parties have not lived together in California since they were married.
6. When the parties got married, Michael was serving in the U.S. Air Force. He continues to serve as a Lieutenant Colonel in the U.S. Air Force.
7. Parties married on July 1, 2006, in Bakersfield, California.
8. Both parties are citizens of the United States.
9. Parties have three (3) children: S.K., P. K., and A.K.
10. All three (3) children are U.S. citizens.
11. From November 2006 through August 2011, parties lived at Tinker AFB in Moore, Oklahoma.
12. S.K. and P.K. were born in June 2011 in Norman, Oklahoma.
13. In August 2011 until May 2012, parties resided with their children in San Angelo, Texas, upon Petitioner's assignment to Goodfellow AFB. During this time, Petitioner attended school to become an Intelligence Officer.
14. Parties moved to Germany twice pursuant to Petitioner's military assignment.
15. The first time parties moved to Germany was in May 2012. Parties, with S.K. and P.K, moved to Ramstein Air Force Base in Germany, where Petitioner was stationed for his military service. The parties resided there for three years, until June 2015.
16. The children attended school in Germany from May 2012 through June 2015.
17. A.K. was born on December 23, 2014, in Landstuhl, Germany at the Landstuhl military hospital.
18. In June 2015, parties moved to Severn, Maryland, where Petitioner had been stationed for his military service. Parties resided here for approximately four and a half (4.5)

4

1 years until January 2020.

19. Parties lived at 8173 Ridgley Loop, Severn, Maryland 21144 from June 18, 2015, through January 26, 2020.

20. In January 2020, parties moved to Weilerbach, Germany, when Petitioner was again stationed in Ramstein Air Base.

21. Petitioner has been stationed at Ramstein Air Base for approximately twenty-five (25) months.

22. From January 27, 2020, through November 20, 2020, parties and their children lived at 30 Mackenbacker Strasse, Weilerbach, Ramstein Germany.

23. In or around December 2020, parties moved to 26 in der Nasserde, Weilerbach, Ramstein, Germany.

24. Respondent and the Children lived in Germany from January 2020, through June 2021.

25. All three (3) of the parties' children attended school at the Ramstein School from January 2020, through the end of the 2020-2021 [school year].

26. Ramstein School is located on Ramstein Air Force Base and is operated by the Department of Defense Education Activity.

27. At Ramstein School the girls receive their lessons in English.

28. Petitioner's most recent assignment in Germany began on January 31, 2020. His assignment was originally to last for 36 months, until January 31, 2023.

29. In or around November 2019, Petitioner applied for command sponsorship for Respondent.

30. In or around April 13, 2021, Respondent was approved for command sponsorship.

31. In or around June 2021, the parties agreed to go on vacation to California. Petitioner had already traveled to the U.S. (specifically, Las Vegas, Nevada) during this time for a training event through the military, so Respondent and the Children met Petitioner in California on June 11, 2011.

32. Respondent and the Children were scheduled to return to Germany on July 7,

2021.

33. Petitioner had to return to Germany on June 19, 2021, to work extra shifts so that the family could travel to Greece, France, and Normandy, in August 2021.

34. Without Petitioner's consent, Respondent stayed with the children in California.

35. The Children have been residing at 2901 Montana Avenue, Merced, CA 95340 since June 16, 2021, with Respondent.

36. In or around June 25, 2021, Respondent informed Petitioner via email that she would not be returning to Germany with the Children and would be staying in the U.S. with the Children.

37. On June 26, 2021, Petitioner responded that he does "not consent to the girls staying in California any longer than we planned, which was 7 July."

38. On July 8, 2021, Petitioner filed an Original Petition for Divorce in Tom Green County, Texas, Case No. C210385F.

39. On July 26, 2021, Respondent initiated a custody proceeding in California

40. In or around September 7, 2021, Respondent flew to Germany.

41. Respondent stayed with her friend, Candace Duke in Germany for two to three weeks from September 7, 2021, to September 28, 2021.

42. On September 14, 2021, Petitioner filed his Request for Return of his three children under Article 28 of the Hague Child Abduction Convention.

43. On November 29, 2021, Petitioner filed the instant Petition for Return of the Children in the Eastern District of California.

44. Petitioner has not commenced any divorce or custody proceedings in Germany.

45. Petitioner has not paid German income taxes on his US wages.

**B.     Facts Proffered by Petitioner that are Disputed by Respondent**

46. From July 2004, through November 2006, parties lived at Tyndall AFB in Panama City, Florida.

47. All of Petitioner's bank accounts, including those with USAA, and credit cards refer to his current address in Germany.

48. The Children are still currently enrolled at the Ramstein School in Germany.

49. The Children received medical care in Germany starting in or around January 2020. All three (3) Children had a primary care provider in Germany.

50. All three (3) Children also visited a dentist twice while in Germany. S.K. and P.K.'s dentist had recommended they get braces, but the dentist recommended that they wait until they were older; thus, had the Children not been retained wrongfully in California, they would likely would have been getting their braces from their dentist in Germany around now.

51. S.K., P.K., and A.K. all currently have medical insurance coverage in Germany through Tricare Europe.

52. In or around September 2020, S.K. and P.K. began receiving allergen immunotherapy, including allergy shots, in Germany, as they had been getting sick with upper respiratory infections. S.K. and P.K.'s doctors advised that they would need to get the allergy shots for a duration of three (3) to five (5) years for maximum efficacy. However, this process was disrupted upon Respondent's wrongful retention of the Children in California in or around June 2021.

53. The children had friends and active social lives in Germany, as they had many friends at school and often played with the neighbor's kids. The Children were also good friends with the children of Petitioner's colleagues, so parties often arranged get-togethers at their houses, which the Children would also attend. The Children had playdates with friends at least once a week. In or around June 8, 2020, parties threw a large birthday party for S.K. and P.K. with around five (5) to ten (10) of their close friends from school. In or around December 2020, parties also threw a large Hawaiian-themed birthday for A.K. with all of her friends from school.

54. The parties agreed for the family to relocate to Germany from the U.S., and to make their home in Germany for the immediate and indefinite future. Their shared intent for the move was for Germany to be the family's new home.

55. In or around the end of November 2020, parties moved from 30 Mackenbacker Strasse, Weilerbach, Ramstein Germany to 26 in der Nasserde, Weilerbach, Ramstein, Germany, the same house parties had lived in when they had moved to Germany for the first time in 2012.

Though parties wanted to initially live at 26 in der Nasserde, it was not available for rent at the time. However, as soon as parties learned that 26 in der Nasserde was once again available, they immediately took steps to move back in. Not only was the house at 26 in der Nasserde larger, but it was also the home the Children had spent the majority of their lives in.

56. While living at 26 in der Nasserde, the Children enjoyed also going to a nearby school to play on the playground, ride their bikes in the parking lot, and play various sports, including baseball, soccer, basketball, and volleyball.

57. The Children also enjoyed going hiking around their town at least once a week. They enjoyed feeding the horses at a local hiking sight. Parties took the Children on various trips throughout Germany and to neighboring European cities, including to a local German castle in or around February 2020; to Berlin in or around June 2020; to Lake Como in Italy for one (1) week in or around August 2020; to Garmisch, Germany in or around September 2020; to Munich in or around October 2020; and to the Austrian-German border in or around the end of May 2020.

58. In or around June 2020, parties first discussed purchasing a house in Germany after Respondent expressed that she did not like the house parties were currently renting.

59. In or around June 2020, Respondent expressed that she thought parties might stay in Germany at least until Petitioner retired, and maybe until the Children graduated high school. Given that the school the Children attended (the Ramstein School) was very competitive due to the outstanding qualifications of the teachers, parties wanted to give the Children the opportunity to remain there through graduation.

60. In or around July 2020, Respondent had been in communication with the seller of a German farmhouse about purchasing that home and was informed that they had already found a buyer.

61. In or around October 2020, Respondent texted Petitioner "looking at a house in in Hutschenhausen at 5:20."

62. In or around October 2, 2020, Petitioner began receiving emails from Inmo Team Jakob, a real estate agent in Germany. Petitioner received these emails through at least December

8

1   2021.  Petitioner attempted to purchase a home through this realtor.

2       63.    In or around October 16, 2020, Respondent sent pictures of several real estate
3   listings in Germany.

4       64.    In or around December 2020, Mr. Krause began taking steps to extend his
5   assignment in Germany because parties had discussed that they wanted to stay in Germany for a
6   fourth year.  Since Mr. Krause is within three (3) years of his retirement, he had the ability to
7   request an extended active duty order that would allow him to remain stationed at Ramstein
8   AFB.

9       65.    Currently, Mr. Krause's assignment has been extended through January 2024.

10       66.    After having been wrongfully retained in the United States by Respondent in or
11   around July 2021, during Facetime calls, the Children repeatedly asked Petitioner if they could
12   return to Germany.

13       67.    The children have no connection to California and have never lived there prior to
14   their abduction.

15       68.    Petitioner's Commander ultimately denied Respondent's ERD request, seeing as,
16   at the time, the Children were already being wrongfully retained in the U.S.

17       69.    Respondent then filed two (2) complaints against Petitioner through the military,
18   alleging emotional and physical abuse.

19       70.    In or around the beginning of July 2021, Respondent started the process of selling
20   parties' house in Maryland.

21       71.    Upon their departure from Maryland, parties rented their home from January
22   2020, through August 31, 2020, and eventually sold it in or around October 5, 2021.

23       72.    After moving to Germany, there was never a point at which parties ever discussed
24   the possibility of returning.

25       73.    In or around August 2021, Respondent attempted to unenroll the Children from
26   Ramstein Intermediate School in Germany without Petitioner's knowledge or consent.

27       74.    Nonetheless, the Children are still currently enrolled in school in Germany.

28       75.    In or around August 2021, Respondent also attempted to unenroll the Children

1 from their Tricare Health Insurance.

2     76. Nonetheless, the Children still currently have health insurance in Germany.

3     77. On August 12, 2021, the CRB [Central Registry Board] met to review Respondent's allegation that she had suffered emotional maltreatment at the hands of Petitioner. The CRB determined that Respondent's allegation failed to meet the criteria for emotional maltreatment and issued a determination statement outlining their decision.

    78. After receipt of the CRB determination, Respondent then attempted to file a complaint with the Military Police in August 2021, this time claiming physical abuse. After an initial investigation, the decision was made to not proceed on Respondent's claim, as her claims were baseless, and no further action was taken.

    79. On September 11, 2021, Respondent gained access into Petitioner's home in Germany by throwing a brick through a window. Respondent then called the Police on herself. As a result of Respondent's actions, a Restraining Order was issued by the military police, ordering Respondent to stay away from Petitioner's residence. Respondent was detained but not arrested.

    80. At the hearing held on December 17, 2021, in Merced County, Respondent dismissed her request for Domestic Violence Restraining Orders.

    81. Petitioner's orders have been extended to remain stationed at Rammstein AFB until January 31, 2024.

    82. Petitioner is not currently appealing the finding that the State of Texas is an inconvenient forum.

    83. In or around April 16, 2021, Respondent shipped her car overseas from the U.S. to Germany.

    **C.**     **Facts Proffered by Respondent that are Disputed by Petitioner**

    84. Petitioner's current assignment will end on January 31, 2023.

    85. During the course of their marriage, Petitioner and Respondent have returned to California multiple time to visit their extended families (their parents), who reside in California.

    86. Petitioner, Respondent, and the children's presence in Germany is governed by

the NATO Status of Forces Agreement, which was originally signed in 1951, and supplementary agreement in 1993, which provides the basis for the legal status of military, U.S. civilian employees and dependents who are stationed on orders in Germany.

87. While living in Maryland, Petitioner and Respondent had a shared intent the children's habitual residence was the United States.

88. Petitioner cannot guarantee his continued Air Force service in Germany.

89. Petitioner, Respondent and the children are neither fluent in German nor learning to speak in German.

90. In this Original Petition for Divorce, Petitioner argued the State of Texas has jurisdiction of himself, Respondent and their children.

91. The court in Tom Green County found the State of Texas has jurisdiction over Petitioner, Respondent and their children, but declined to exercise jurisdiction because Texas was not a convenient forum.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

92. In the hearing on jurisdiction in Tom Green County State Court on August 30, 2021, Petitioner testified:

```
20     Q.   And has that been the designation of -- for
21   your residence, your state of residence, since the time
22   you left in May of 2012?
23     A.   Yes, sir.
24     Q.   What was your intent regarding identifying
25   Texas as your state of residence?
 1     A.   My intent was to make that my state of
 2   residence and then move back there once I was done with
 3   the military service.
 4     Q.   Okay.  And when is that; when will you be done
 5   with your military service, do you know yet?
 6     A.   The -- not for sure.  The earliest opportunity
 7   is July of 2025, but there is also an opportunity for me
 8   to be stationed there next, depending on what is
 9   available.
10     Q.   Okay.  What are the reasons for you wanting to
12     A.   Texas is my home state.  We enjoyed living
13   there.  It has multiple job opportunities and we have
14   friends there.
```

93. Respondent currently has no right to work in Germany.

94. Petitioner is addicted to the consumption of alcoholic liquor.

95. Petitioner exhibits compulsive behavior resulting from alcohol dependency.

96. When Petitioner drinks alcohol he becomes verbally abusive with Respondent.

97. At time through their marriage, Petitioner has been physically abusive toward Respondent.

98. Petitioner's children have suffered psychologically due to Petitioner's abusive

12

behavior towards Respondent.

99. The children's return to Germany to be with Petitioner will result in grave psychological harm.

100. There are no provisions or orders which could be made which would prevent grave psychological harm if the children were returned to Germany.

101. Respondent has been the primary caretaker of the children since their birth.

102. As Petitioner has served in the Air Force full-time, Respondent has been the primary caretaker of the children.

103. The children are thriving in California.

104. The children are doing well in school in California.

105. The children object to being returned to Germany and have attained an age and degree of maturity at which it is appropriate to take account of the children's views.

106. PK asked her teacher if she and her sister could hide in the classroom if they saw Petitioner at their school to pick them up.

107. The children cry when Petitioner tells them they might have to return to Germany.

108. Petitioner refuses to permit the children to go to a psychologist for counseling.

109. When Petitioner, Respondent and the children moved to Germany the second time, they did not sell their house in Maryland until after divorce proceedings were commenced.

110. In January 2022, Petitioner made arrangements for an assignment at Beale Air Force Base in California.

111. Prior to the filing of the current petition regarding the Hague Petition on the Civil Aspects of International Child Abduction, Petitioner did not have the intent to make Germany the habitual residence of himself and his children.

112. When Respondent moved to Germany the second time due to Petitioner's military assignment, she did not intend for Germany to be her or her children's habitual residence.

113. Respondent's marital assets are currently frozen due to divorce proceedings and she has very little income.

114. Respondent's financial condition is extremely dire.

115. For approximately fifteen years of marriage, Respondent was a stay-at-home mom.

116. Respondent is currently working in California part-time as she is caring for the three children and earns minimum wage.

117. Petitioner is currently paying $2,000 a month in support.

118. Petitioner earns approximately $120,000, plus bonuses, a year.

119. While Petitioner can make requests regarding where he will be assigned, the U.S. Air Force may elect to assign Petitioner wherein it may have a need for his skill set.

120. In a hearing on jurisdiction in Tom Green County State Court for divorce and child custody proceedings, Petitioner testified he considered himself domiciled in Texas, regardless of where he was stationed in the Air Force.

121. Petitioner is currently appealing the finding that the state of Texas is an inconvenient forum.

122. Respondent has no right to be in Germany outside of Petitioner's military service. As Respondent is currently separated from Petitioner, she has no right to live or remain in Germany outside a limited visitation period for tourists.

## VI.   FILING DEADLINES

### A.   Witnesses

No later than **May 18, 2022**, each party shall file and serve a final witness list, including the name of each witness along with the business address or city of residence for each witness, to the extent known, and omitting witnesses listed in the joint pretrial statement which the parties no longer intend to call. **The parties may not call any witness that is not on the final witness list unless (1) it is <u>solely</u> for impeachment or rebuttal purposes, (2) the parties stipulate, (3) additional witnesses are required in light of the Court's ruling on a motion *in limine*, or (4) it is necessary to prevent "manifest injustice."** Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).[3]

---

[3] The Federal Rules of Civil Procedure and Local Rules are cited within this order, as generally utilized in pretrial orders. The Court recognizes that such rules have differing or limited applicability to the instant proceeding, in that this action is not proceeding into a typical civil trial. Nonetheless, the Court finds the limited citations to be helpful in framing certain expectations of the parties, and does not expect the parties to object to utilizing these same guidelines in this action. As noted herein, the parties may object to any aspect of this order within seven (7) days.

During the course of the evidentiary hearings, the parties' counsel are obligated to provide opposing counsel, by the close of the hearing day, the names of the witnesses the party intends to call on the next hearing day. If evidentiary problems are anticipated, the parties' counsel shall immediately notify the Court that a hearing will be required.

The parties are forewarned that <u>every</u> witness they intend to call must appear on their own witness list. The mere fact that a witness appears on the opposing party's witness list is not a guarantee that the witness will be called at the hearing or otherwise be available for questioning by other parties. Each party must undertake independent efforts to secure the attendance of <u>every</u> witness they intend to call at the hearing.

### B.   Exhibits

No later than **May 18, 2022**, the parties shall file and serve their final exhibit list and pre-marked exhibits.

1. <u>Pre-Marked Exhibits</u>:

All exhibits must be pre-marked with an exhibit sticker or other legible numbering/lettering. If the individual exhibit includes multiple pages and is not easily identified as to each page (i.e., Bates stamp numbering), then the exhibit must be page numbered. This requirement that exhibits be pre-marked applies both to evidence that will be formally admitted into evidence as well as any other exhibits that will be presented in any manner during trial, such as "demonstrative" evidence. Impeachment or rebuttal evidence need not be pre-marked. However, evidence of bias, extrinsically introduced, must be pre-marked.

    **a.**    **Joint Exhibits**: Joint exhibits are those exhibits which all parties agree may be admitted into evidence without the need for laying a proper foundation under the Federal Rules of Evidence. Joint exhibits must be pre-marked with the designation "[J]" (e.g., J-1, J-2, etc.). Those exhibits may be introduced at any time during the course of the hearing. However, unless the parties agree otherwise on the record, joint exhibits are not "automatically" admitted into evidence: at least one of the parties must admit a joint exhibit into evidence.

    **b.**    **Petitioner's Exhibits**: Petitioner's exhibits must be pre-marked using the letter

"P" and **numbers** beginning with 100 (e.g., P 100, P 101, etc.).

    **c.**    **Respondent's Exhibits**:  Respondent's exhibits must be pre-marked using the letter "R" and **numbers** beginning with 500 (e.g., 500, 501, etc.).

    2.    <u>Exchange and Filing of Exhibits List and Exhibits</u>

No later than **April 27, 2022**, the parties shall exchange their proposed exhibits to the extent they have not done so.  The parties' counsel shall meet and conduct an exhibit conference no later than **May 4, 2022,** to pre-mark and examine exhibits and to prepare exhibit lists.  No later than **May 18, 2022**, the parties shall file and serve their final exhibit list and pre-marked exhibits.

Petitioner shall mark exhibits beginning with P 200, Pl 201, Pl 202, etc.  Respondent shall mark exhibits with R 500, R 501, R 502, etc.  All documents shall be submitted in PDF format and saved by exhibit identifier (i.e.: P 100 shall be saved P 100.pdf, etc.), except video and audio which shall be submitted in the formal as set forth in the Eastern District of California website under "Attorney Info" then "Electronic Evidence Submission/Presentation" and proceed to section entitled "Acceptable Audio and Video Formats," but that file shall be saved with exhibit identifier, as noted above (except that the file extension will be in the video or audio format allowed for under Eastern District format [P 101.*wmv*, etc.).  **All exhibits shall be electronic and the parties are relieved from the obligation to provide binders to the Court and opposing counsel.**  The parties shall contact Courtroom Deputy Victoria Gonzales to obtain the link for the electronic evidence box.

    3.    <u>Responses to Discovery Requests</u>

The parties may admit responses to discovery requests into evidence.  The parties shall file and serve a list of all responses to discovery requests intended to be used no later than **May 18, 2022.**  The list shall identify the responses to discovery requests by title and set number.

If a party seeks to admit a physical copy of the written discovery responses or the documents produced in response to the discovery requests into evidence, the discovery responses or documents must be pre-marked as an exhibit in the same manner discussed above. Alternatively, if the party intends to read relevant portions of the discovery responses into

evidence, a copy of the discovery responses must be lodged with the Court no later than **May 18, 2022.** The Court will address objections to discovery responses as they arise during the evidentiary hearing.

All parties are reminded of their continuing obligation to update their prior discovery responses if they obtain new information or is otherwise made aware that a prior discovery response is incomplete or incorrect. Fed. R. Civ. P. 26(e)(1).

**If a party attempts to admit or use for any purpose evidence that (1) was not previously disclosed during discovery and (2) should have been disclosed as an initial disclosure under Rule 26(a) or as a supplemental disclosure under Rule 26(e), the Court will prohibit that party from admitting or using for any purpose that evidence, unless the failure was substantially justified or was harmless. See Fed. R. Civ. P. 37(c)(1).**

4. <u>Deposition Testimony</u>

Deposition testimony shall be designated by page and line number, with such designation to be **filed and served no later than May 11, 2022.** Any counter-designation as to the same designation (also set out by page and line number) shall be **filed and served no later than May 18, 2022.** The original certified transcript of any deposition identified in a designated or counter-designation shall be lodged with the clerk's office **no later than May 18, 2022**, if not previously lodged with the Court.

If any party intends to admit relevant portions of deposition testimony into evidence, or any corresponding exhibits, the relevant deposition testimony or deposition exhibits must be pre-marked as an exhibit in the same manner discussed above. However, any party may request that deposition testimony offered for any purpose other than impeachment be presented in non-transcript form, if available. <u>See</u> Fed. R. Civ. P. 32(c).

The Court will address objections to deposition testimony as they arise during the hearing.

5. <u>Post-Hearing Exhibit Retention</u>

Pursuant to Local Rule 138(f), the Court will order that custody of all exhibits used, referenced and/or admitted at be returned to the party who initially marked the exhibit,

irrespective or who used, reference or admitted the exhibit. The parties shall retrieve the original exhibits from the Courtroom Deputy following the close of evidence. Joint Exhibits will be returned to Petitioner unless otherwise agreed to by the parties in writing or on the record. If a party wishes another method for exhibit retention, then such alternative method must be raised prior to the return of the exhibits.

### C. Final Evidentiary Hearing Briefs

Final evidentiary hearing (trial) briefs shall be filed and served no later than **May 18, 2022.** The form and content of the briefs should comply with Local Rule 285, to the extent applicable.[4]

## VII. COMPLIANCE WITH THIS ORDER

Strict compliance with this order and its requirements is mandatory. This Court will strictly enforce the requirements of this order. Failure to comply with all provisions of this order may be grounds for the imposition of sanctions, including possible dismissal of this action or entry of default, on any counsel as well as on any party who causes non-compliance with this order. This order shall be modified "only to prevent manifest injustice." Fed. R. Civ. P. 16(e).

## VIII. OBJECTIONS TO OR STIPULATED CHANGES TO THIS ORDER

Any party may file and serve written objections to any of the provisions of this order within **seven (7) days** of the date of entry of this order. Such objections shall specify the requested modifications, corrections, additions, or deletions.

Additionally, the parties may stipulate to alterations to this order's requirements or dates and deadlines, subject to the approval of the Court.

## IX. USE OF ELECTRONIC EQUIPMENT IN COURTROOM

The parties are directed to the United States District Court for the Eastern District of California's website (http://www.caed.uscourts.gov) under Judges; United States Magistrate

---

[4] Recognizing the nature of this action is not a typical civil trial, the parties shall still strive to track the requirements of Local Rule 285(a). Because the parties have already submitted substantive briefing in this matter, the parties may direct the Court to such already completed briefing, and the Court expects the parties to only further brief those issues not yet briefed in the previous briefing, or to supplement legal or factual authority in light of the issues to be developed at the evidentiary hearing. Further, because the parties have already submitted briefs, the Court will not accept responsive briefs as described in Local Rule 285(b).

Judge Stanley A. Boone (SAB). In the area entitled "Case Management Procedures," there is a link to "Courtroom Technology." Any party wishing to test their own equipment in coordination with the Court's electronic equipment may contact the Courtroom Deputy Clerk Victoria Gonzales at (559) 499-5672 or vgonzales@caed.uscourts.gov at least two (2) weeks before the start of the evidentiary hearing.

The parties are advised that electronic equipment and resources available for this hearing may differ from the equipment and resources available in other courtrooms and may even differ from the equipment and resources available in this courtroom at another time. It is the responsibility of the parties to familiarize themselves with the equipment and resources available for use in this courtroom prior to the commencement of any hearing. If any party is unfamiliar with the equipment and resources available, that party may be ordered to proceed without the aid of such equipment and resources and/or may be sanctioned for any fees, costs or expenses associated with any delay.

## X.     OTHER INFORMATION

Additional information describing this Court's expectations regarding attorney conduct and decorum during all proceedings before United States Magistrate Judge Stanley A. Boone can be found at the United States District Court for the Eastern District of California's website (http://www.caed.uscourts.gov) under Judges; United States Magistrate Judge Stanley A. Boone (SAB). In the area entitled "Case Management Procedures," there are links to "Standard Information" and "Trial Conduct and Decorum." All parties and counsel shall comply with the guidelines set forth therein. However, in the event there is a conflict between this order and the information on the website, this order shall supersede the information on the Court's website.

IT IS SO ORDERED.

Dated:    **March 31, 2022**

UNITED STATES MAGISTRATE JUDGE