# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KRAUSE,<br><br>        Petitioner,<br><br>    v.<br><br>TARA KRAUSE,<br><br>        Respondent. | Case No. 1:21-cv-01706-JLT-SAB<br><br>ORDER DENYING PETITIONER'S MOTION TO PRESENT TESTIMONY BY VIDEO CONFERENCE<br><br>(ECF Nos. 39, 40, 42) |

**I.**

**INTRODUCTION AND BACKGROUND**

This action proceeds on Petitioner Michael Krause's ("Petitioner") verified petition for return of children to petitioner (ECF No. 1), brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act, Pub. L. No. 100-300, 102 Stat. 437 (1988) (codified as amended at 22 U.S.C. §§ 9001 et seq.), which implements the Convention. See Radu v. Shon, 11 F.4th 1080, 1084–85 (9th Cir. 2021). The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. (ECF No. 17.) Currently before the Court is Petitioner's motion to permit witness testimony via video conference, filed on April 15, 2022. (ECF No. 39.) On April 22, 2022, Respondent Tara Krause filed an opposition to the motion. (ECF No. 40.) The Court held a hearing on the motion on April 27, 2022. Attorneys Richard Min, Michael

Banuchis, Samantha Jacobson, and Savannah Wadsworth appeared on behalf of Petitioner, alongside Mr. Krause. Attorney Drexwell Jones appeared on behalf of Respondent.

## II.

## LEGAL STANDARD

The Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49 (the "Hague Convention"), was implemented through the enactment of the International Child Abduction Remedies Act ("ICARA"), 100 Pub.L. No. 300; 102 Stat. 437 (1988) (codified as amended at 42 U.S.C. § 11601 et seq.). Asvesta v. Petroutsas, 580 F.3d 1000, 1003 (9th Cir. 2009). "The Hague Convention of the Civil Aspects of International Child Abduction provides for the prompt return of abducted children so that the country of habitual residence may resolve custody disputes." Radu, 11 F.4th at 1083–84. "The Convention's goal is 'to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and . . . to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.' " Asvesta, 580 F.3d at 1003 (quoting Hague Convention, Art. 1). "Federal district courts have jurisdiction over actions arising under the Hague Convention pursuant to 22 U.S.C. § 9003." Radu, 11 F.4th at 1085–86 (quoting Flores Castro v. Hernandez Renteria, 971 F.3d 882, 886 (9th Cir. 2020)); see also Convention, Art. 18 ("The provisions of this Chapter do not limit the power of a judicial or administrative authority to order the return of the child at any time.")

Rule 43(a) requires the testimony of witnesses be taken in open court, "unless a federal law, these rules, the Federal Rules of Evidence, or other rules adopted by the Supreme Court provide otherwise."

> At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

Fed. R. Civ. P. 43. Additionally, FRE 611 provides:

**(a) Control by the Court; Purposes.** The court should exercise

2

reasonable control over the mode and order of examining witnesses and presenting evidence so as to:

**(1)** make those procedures effective for determining the truth;

**(2)** avoid wasting time; and

**(3)** protect witnesses from harassment or undue embarrassment.

Fed. R. Evid. 611(a).

## III.

## DISCUSSION

Petitioner moves the Court pursuant to Federal Rule of Civil Procedure ("Rule") 43(a) for an order permitting the testimony of Petitioner, Petitioner's parents, and other witnesses "who are located in Germany or otherwise outside California," to be taken at the evidentiary hearing set to begin on May 25, 2022, by videoconference.

Petitioner emphasizes the broad authority of the Court to allow such video testimony pursuant to Rule 43, as well as Rule 611 of the Federal Rules of Evidence ("FRE 611"). See Air Turbine Tech., Inc. v. Atlas Copco AB, 410 F.3d 701, 714 (Fed. Cir. 2005) ("the motion involved a matter expressly reserved to the sound discretion of the trial court"); Fed. R. Civ. P. 43(a) ("For good cause in compelling circumstances and with appropriate safeguards, the court *may* permit testimony in open court by contemporaneous transmission from a different location.") (emphasis added); Fed. R. Evid. 611(a) ("court should exercise reasonable control over the mode and order of examining witnesses."). Petitioner additionally proffers that relaxed evidentiary authentication rules, as well as the requirement of an expeditious resolution of Hague Convention cases, afford additional discretion to the Court in this matter. See 22 U.S.C. § 9005 ("With respect to . . . any petition to a court under section 9003 of this title, which seeks relief under the Convention, or any other documents or information included with such application or petition or provided after such submission which relates to the application or petition, as the case may be, no authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court."); Mar. v. Levine, 136 F. Supp. 2d 831, 833 (M.D. Tenn. 2000) ("Courts are to place these

3

cases on a "fast track" in order to expedite these proceedings and carry out the purposes of the Convention.").

Petitioner cites to a number of cases demonstrating that telephonic or video appearances for witnesses, including parents in foreign countries, occurs regularly in Hague Convention cases. See, e.g., Valenzuela v. Michel, 736 F.3d 1173, 1175 (9th Cir. 2013) ("At trial, Blanca and her witnesses testified via telephone from Mexico with the help of an interpreter."); Mota v. Castillo, 692 F.3d 108, 111 (2d Cir. 2012) ("The court permitted the parties limited discovery, and then held a two-day bench trial in which Asuncion Mota, her parents, and her uncle testified via telephone with the aid of interpreters, and Rivera Castillo testified in person.").[1] Petitioner also highlights the growing acceptance and use of video testimony following the COVID-19 pandemic, as well as more generally prior to the pandemic. See House v. Players' Dugout, Inc., No. 3:16-cv-00594-RGJ, 2021 WL 4898071, at *13–14 (W.D. Ky. Oct. 20, 2021); In re Vioxx Prod. Liab. Litig., 439 F. Supp. 2d 640, 642 (E.D. La. 2006) ("the Court notes that there has been an increasing trend by federal courts allowing and by legal commentators advocating for the use of contemporaneous transmission of trial testimony.").

The Court acknowledges such remote testimony is not rare in Hague Convention actions, and acknowledges the growing use of video testimony, both before and following the COVID-19 pandemic. Nonetheless, the Court still must determine under the broad discretion granted under Rule 43 whether there is good cause present in compelling circumstances for the taking of such testimony via video, where the Respondent here strongly opposes such remote testimony on the proffer that the testimony of Petitioner is central to the case. See, e.g., House, 2021 WL 4898071, at *13 ("Although Rule 43(a) allows 'testimony in open court by contemporaneous transmission from a different location,' the party requesting remote testimony must present 'good cause in compelling circumstances and with appropriate safeguards[,]' which 'isn't applied willy-nilly.' ") (quoting Ballestreros v. Wal-Mart Stores E., LP, Case No. 2:19-cv-881-SPC-NPM, 2021 WL 2917553, at *1 (M.D. Fla. Jul. 12, 2021)).

---

[1] Petitioner cites twenty-five (25) cases from across the Country in support of this proposition. (ECF No. 39 at 2–3.)

Turning to the specific showing here, Petitioner relies on <u>Lopez v. NTI, LLC</u>, 748 F. Supp. 2d 471, 480 (D. Md. 2010), for the contention that the cost of international travel constitutes sufficient good cause under Rule 43. Notably, in <u>Lopez</u>, the Court explained that it would be unfair as to seven Honduran plaintiffs in that case where they made less than $7,000 per year:

> Plaintiffs have demonstrated good cause as to those Plaintiffs residing in Honduras. The cost of international travel can provide good cause for contemporaneous transmission of testimony . . . In some cases, travel cost and inconvenience have justified contemporaneous transmission even when the parties where located within the United States, in contrast to the internationally resident Honduran Plaintiffs in this case . . . Forcing the Honduran Plaintiffs in this case to travel to the United States would impose substantial inconvenience and cost on persons with strikingly few financial resources. (Paper 76–1). When viable alternatives like videoconferencing are available, compelling individuals who make no more than $7,000 a year to travel hundreds of miles seems fundamentally unjust.

<u>Lopez</u>, 748 F. Supp. 2d at 480. In the instant case, by contrast, Respondent has asserted that Petitioner's annual salary is approximately $120,000, plus bonuses, and that Petitioner currently pays her $2,000 per month in support. Even if these amounts are disputed to some extent by Petitioner,[2] the Court can hardly conclude comparing the financial hardships of Petitioner, a Lieutenant Colonel in the U.S. Air Force, with the "strikingly few financial resources" of the Honduran plaintiffs in <u>Lopez</u> as appropriate. Indeed, the Court additionally notes that, also in <u>Lopez</u>, the court did not find good cause as to other witnesses located within the United States, who were without a demonstrated financial hardship:

> Although Plaintiffs have shown good cause as to the Honduran Plaintiffs, good cause has not been shown as to the remaining Plaintiffs. Plaintiffs do not address the Plaintiff residing in Richmond, Virginia anywhere in the motion papers, and the court cannot discern any reason why the Richmond Plaintiff would be unable to attend. The court is also unconvinced that the financial expense of travelling from Tennessee merits videoconferencing for that witness. Therefore, Plaintiffs' motion will be denied as to those two witnesses.

<u>Lopez</u>, 748 F. Supp. 2d at 481.

---

[2] The Court notes the financial figures were obtained from the parties' prior filings in facts proffered by Respondent that are disputed by Petitioner. (<u>See</u> ECF No. 38 at 14.)

Petitioner also cites <u>Virtual Architecture, Ltd. v. Rick</u>, No. 08 Civ. 5866(SHS), 2012 WL 388507, at *2 (S.D.N.Y. Feb. 7, 2012), in support of his proffer of good cause relating to travel costs and hardship. (ECF No. 39 at 5.) Therein, the court allowed such testimony when faced with, in addition to a greater than 20-hour flight time, a proffer that it was "absolutely impossible" for the witness to travel to New York due to visa rules:

> The same considerations that were operative in those cases are at issue here. Pardiwalla resides in the Seychelles, an archipelago of islands in the Indian Ocean. (Trial Tr. at 176: 23–24.) The Seychelles are approximately 8400 miles from New York City, and the flight time between the Seychelles and New York City is approximately 20 hours and 40 minutes via London. Travel Distances from United States . . . Moreover, Pardiwalla testified that it was "absolutely impossible" for him to travel to New York to testify due to the "all the rules and regulations in the states," presumably referring to the rules for obtaining visas.

<u>Virtual Architecture</u>, 2012 WL 388507, at *2.

More pointed to the facts at hand here, Petitioner directs the Court to <u>Nowlan v. Nowlan</u>, No. 5:20cv00102, 2021 WL 217139, at *1 (W.D. Va. Jan. 21, 2021), wherein a Canadian military member was allowed to testify in a Hague Convention case in which he was a petitioner. Again, the court therein cited to a proffer that attendance at a hearing was "impossible," and considered the totality of the circumstances during the height of the COVID-19 pandemic. The court recognized the critical nature of the parent's testimony involving allegations of sexual abuse, but addressed such concerns with additional safeguards including the opportunity for supplemental cross-examination:

> At a recent status conference with the parties, Petitioner's counsel advised that, due to his obligations to the military in Canada, it would be "impossible" for him to attend the evidentiary hearing that is currently set for January 28–29, 2021, in Roanoke. Because of the global COVID-19 pandemic, travel options and opportunities are curtailed, and even more so for Petitioner as his current duty assignment is in a hospital in Ontario, Canada. As a result, Petitioner requests that he be permitted to attend and participate in the hearing via video conference.
>
> Respondent filed a prompt objection. (ECF No. 41.) The crux of her objection is relatively simple. She has alleged that Petitioner sexually abused their five-year-old daughter in Canada prior to the child's removal to the United States, and that the return of the child to Petitioner's custody would place that child in grave risk of

6

> physical harm. (*See* Answer [ECF No. 39] ¶¶ 54, 60.) Because Petitioner's testimony about this allegation, and, relatedly, the court's assessment of his credibility, are essential to resolving this claim, Respondent argues that Petitioner should be required to appear and testify in person.
>
> Considering the requisite compressed timeframe of this case, the adequacy of the court's videoconferencing platform (and the court's familiarity with it), Petitioner's military obligations, and the risks and difficulties associated with traveling internationally during the global pandemic, the court will grant Petitioner's request and overrule Respondent's objection. In so doing, the court is cognizant of the potential difficulties associated with cross-examining a witness via video, but these are by no means insurmountable, particularly for a skilled and highly experienced attorney, like Respondent's counsel, who has been practicing complex criminal and civil litigation in this court for over 25 years. To mitigate any potential limitations, the court will grant Respondent's counsel appropriate latitude in conducting his cross-examination of Petitioner and allow Respondent's counsel to "recross" Petitioner following his counsel's redirect of their client. *See* Fed. R. Evid. 611(a)(1) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . make those procedures effective for determining the truth."). The court, in its discretion, will carefully consider other reasonable measures requested by Respondent. With these accommodations and the court's generally favorable impression of videoconferencing based on its use in myriad hearings over the last several months, it believes that Respondent's ability to conduct a full, meaningful, and vigorous cross examination of the adverse party will not be significantly or materially impaired. And the court is confident that it can fairly and accurately judge Petitioner's testimony whether he appears in person or via video.

Nowlan, 2021 WL 217139, at *1.

Having laid out the legal authority and general arguments by Petitioner, the Court now turns to the specific proffers of good cause in compelling circumstances by Petitioner here.

### A. Petitioner's Specific Proffers of Good Cause

Petitioner proffers there are no non-stop commercial flights between Ramstein Air Base (Frankfurt, Germany), and Fresno, California;[3] an internet search demonstrates that flights around the date of the hearing total at least fourteen (14) hours; and the cost of a round-trip plane fare ranges between approximately $800 and $1,600. The less expensive options may involve

---

[3] In his declaration, Petitioner actually refers, mistakenly, to travelling to Sacramento rather than Fresno. (ECF No. 39-1 at 2.)

7

lengthy layovers.  Given this, Petitioner argues that "[c]ompelling a left behind parent in his position to incur travel expenses in addition to his already substantial legal fees attendant with this litigations is onerous," and he should not be caused to incur additional travel and lodging costs.  Further, Petitioner contends that Respondent will not be prejudiced by allowing him and other witnesses to testify remotely because they will be in open court under oath, and subject to cross-examination.  He also emphasizes the Court is the fact-finder and not a jury, in addition to the fact that videoconferencing technology has substantially improved in recent years.

Petitioner's declaration in support of the motion proffers that: he holds a leadership position in the United States Air Force in Germany; his unit is currently supporting the war effort in Ukraine; leaving the post in Germany would hinder ongoing operations; if he left, "leadership would need to task other personnel who are not suited to fulfil my particular duty requirement with filling in at my position"; due to the war, leadership "can ill afford to relinquish manpower at this time"; and "[i]n short – my unit and leadership need me in Germany due to the hostilities in Ukraine."  (Pet. Decl. ¶¶ 1–3, ECF No. 39-1.)  Further, Petitioner declares that it will be difficult to travel to the United States because he will need to coordinate with his supervisor and commander, "as well as provide justification as to why the hearing cannot be held over video conference," and it would take several additional days to be mission capable after the time off.  (Pet. Decl. ¶¶ 4–5.)  Finally, Petitioner declares that he has a medical condition he wishes the Court to consider, specifically ulcerative colitis,[4] and proffers that it is very difficult to travel without significant difficulty as he requires restroom accessibility immediately upon flare ups, that his condition is severe enough that he was disqualified from his initial air force specialty due the disability, and that it has been a great hindrance on his personal and professional life.  (Pet. Decl. ¶ 7.)

### B.   Respondent's Opposition to Petitioner's Motion

In opposition, Respondent emphasizes Petitioner is the primary witness for Respondent's

---

[4] The Court notes that ulcerative colitis is described as an inflammatory bowel disease that causes inflammation and ulcers in one's digestive tract.  Ulcerative colitis affects the innermost lining of the large intestine and rectum. Symptoms usually develop over time, rather than suddenly.  See MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/ulcerative-colitis/symptoms-causes/syc-20353326 (last visited Apr. 28, 2022).

8

1  position in this action, stating that the "gravamen" of her case is that Petitioner's "Hague petition
2  case is a sham," and his "sincerity, honesty, and integrity are at issue." (ECF No. 40 at 1.)

3  Respondent emphasizes that the primary purposes of Rule 43(a) are to ensure that the
4  accuracy of witness statements may be tested by cross-examination and to allow the trier of fact
5  to observe the appearance and demeanor of the witnesses. In re Adair, 965 F.2d 777, 780 (9th
6  Cir. 1992). Respondent argues that the general preference of the Federal Rules as expressed in
7  Rule 43(a) is for oral testimony that allows for the opportunity for live cross-examination and
8  observation of the demeanor of the witness. Because Petitioner's truthfulness is at issue in this
9  action, Respondent argues the Court's ability to observe his appearance and demeanor is
10 essential.

11 Given Petitioner's veracity is at issue, counsel for Respondent proffers he was "shocked
12 by the declaration" submitted by Petitioner, where he claimed leaving his post in Germany
13 would hinder ongoing support operations in Ukraine, and claimed it would be difficult to obtain
14 approval from superiors to attend the hearing given the war in Ukraine, in addition to expressing
15 concern about the amount of time to travel and his ulcerative colitis. (ECF No. 40 at 2 (citing
16 Pet. Decl. ¶¶ 3–7).)

17 Respondent argues that while seemingly legitimate reasons, in fact, on April 13, 2022,
18 two days before signing the declaration, Petitioner appeared (remotely) at a divorce hearing in
19 California Superior Court and requested to have time with his children from June 15, 2022, to
20 July 1, 2022, because Petitioner wanted to take the children to Disneyworld. (Id. at 2 (citing
21 Decl. Tara Krause ("Resp. Decl.") ¶ 4, ECF No. 40-1).) At the divorce hearing, Petitioner also
22 asked the court to make a ruling because he wanted certainty in order to make a request to his
23 superiors for the time off. (Id. (citing Resp. Decl. ¶ 4).) Moreover, Petitioner secured an order
24 from the court permitting him to have custody of his children from June 15, 2022, to July 1,
25 2022, subject to the condition that Petitioner was not permitted to take the children outside of the
26 State of California. (Id. (citing Resp. Decl. ¶ 5).) Respondent also proffers that, despite this
27 limitation to the order, Petitioner told his children on April 21, 2022, that he would be taking
28 them to Disneyworld, Florida on June 15, 2022. (Id. (citing Resp. Decl. ¶ 6).) Further, it was

1  indicated that Petitioner's parents would also join the children in Florida for the Disneyworld
2  vacation. (Id. (citing Resp. Decl. ¶ 6).)

3  Respondent submits that these representations by Petitioner are consistent with
4  Respondent's theory of this case, which is that Petitioner utilizes his military service in Germany
5  as a justification "when he finds it convenient, but the whole truth is somewhat different." (Id. at
6  2.) Respondent proffers it is perplexing that it appears Petitioner acts on one hand as if the
7  Ukraine war will continue through May 25, 2022, but will be concluded within three weeks
8  thereafter, in time for Petitioner's June 15, 2022 vacation. More plainly, Respondent
9  characterizes Petitioner's averment that he cannot attend a hearing in California on May 25,
10 2022, even though he plans to visit California on June 15, 2022, as "if not an outright lie by
11 omission, exceedingly disingenuous." (Id. at 3–4.) Thus, Respondent submits the proffered
12 good cause regarding the inability to appear on May 25, 2022, is undermined by Petitioner's
13 plans to visit California on June 15 through July 1. Respondent further proffers that if Petitioner
14 needs to move the hearing date from May 25, 2022, to a date occurring sometime between June
15 15 and July 1, 2022, Respondent is willing to stipulate to such a continuance.

16 As for third-party witnesses, Respondent has agreed that third-party witnesses may
17 appear by video for the hearing, provided they are located outside the United States and meet the
18 Court's requirements for appearing by video. (Id. at 3.)

19 As for Petitioner's citation to the expenses of travel, Respondent emphasizes that
20 Petitioner's filing "conveniently neglects to inform the court of the existence of a routine military
21 flight between Ramstein Air Force Base and Baltimore known as the 'Patriot Express,' . . . which
22 is a Department of Defense contracted commercial flight which provides international support to
23 travelers on official duty and their families . . . makes about three trips a week . . . [and on which
24 Petitioner] can fly 'space available' . . . for approximately $25." (Id. at 3–4.)

25 Finally, Respondent argues good cause does not exist to allow Petitioner's parents to
26 testify by video as the parents, who live in Southern California, were planning to join the
27 children in Florida for the Disneyworld vacation, and if they can travel there, they should be able
28 to travel from Southern California to Fresno, California. (Id. at 4.)

**C.      Analysis**

The Court notes Petitioner has raised three separate requests to appear by videoconference at the May 25, 2022 hearing and testify remotely, and the Court shall examine Petitioner's requests to determine whether the appropriate showing of good cause has been satisfied as to each proffered witness.

1.      Petitioner's Request to Testify by Videoconference

With respect to Petitioner's request to appear and testify by videoconference, the Court finds Petitioner's proffers of "good cause" are unavailing.

**a.      Active-Duty Military**

First, the Court finds Petitioner's argument that he cannot appear in person for the May 25, 2022 hearing because "leaving [his] post in Germany would hinder ongoing operations" regarding the war in Ukraine is unpersuasive. The Court is not unsympathetic to the logistical difficulties that may arise from requiring Petitioner to coordinate with his supervisor and the commander of his unit — and acknowledges there is always the possibility that Command might deny Petitioner's leave request. However, it is worth noting that Petitioner did not relocate to Germany at the start of the conflict in Ukraine, but was stationed there for one tour in 2012 and another tour starting in January 2020 (see ECF No. 38 at 4–5); also noteworthy is the fact that none of Petitioner's arguments reference statutes governing the military leave program, as established through 10 U.S.C. §§ 701 et seq. (some sections which include provisions that certain court matters, including custody issues, may *require* superior officers to grant requested leave). More importantly, it appears Petitioner was perfectly capable and willing to make such administrative coverage efforts in order to plan a family vacation to Disneyworld, Florida. This analysis does not change simply because Petitioner has not yet requested and secured leave for this vacation from his superiors. Similarly, regardless of whether he "insisted" the superior court issue a contemporaneous ruling as to that matter, the undisputed fact remains that Petitioner contemplated the trip, and was so confident in the possibility that his request for leave would be approved that he deemed it appropriate to represent his plans to the divorce court, request leave from the court to take the trip *before* submitting any leave request to his superiors in the military,

and tell his children (even before finalizing plans) that he intended to take them to Disneyworld. The Court finds these facts, alone, strongly belie Petitioner's contention that obtaining approval to attend the upcoming court hearing is so prohibitively detrimental to the war effort that Petitioner must attend the hearing by videoconference only.

At the hearing on the motion, Petitioner indicated he is only permitted to request leave during certain months; currently, he may only request time off in June 2022.[5] (See also Pet. Decl. ¶ 3, ECF No. 41-1.) The Court noted at the hearing, as it notes now, this contention was not asserted or briefed in any form by Petitioner. To the extent that Petitioner seeks to submit arguments at the hearing that were not briefed, so as to preclude the other party a fair opportunity to prepare a response to them, Petitioner's arguments are not well-taken. Additional information provided by Petitioner at the hearing, for the first time, is that Petitioner's request for leave was only initially denied "verbally," or "informally"; a formal denial has "not yet" issued.[6] Indeed, Petitioner never clarified to the Court that he submitted a "formal" request for time off so that he could attend the May 25 hearing, nor did he proffer any evidence detailing what actions, if any, he took in making a good faith attempt to obtain the time off for that date. To the contrary, it appears Petitioner's argument is largely grounded in his own speculative presumption that it is a "likely possibility that he will not be able to get the time off from the military to appear in person," which suggests to this Court that Petitioner and his counsel assumed that obtaining leave to appear by videoconference was a foregone conclusion. It was not. Thus, Petitioner's request to appear via videoconference on this basis is denied.

### b. Financial Burden

With respect to Petitioner's argument that international airfare (ranging up to $1,600) is

---

[5] Yet, the Court notes Petitioner agreed to set the evidentiary hearing date for May 25. The fact that Petitioner would request a hearing date for which he apparently knew in advance he would not be able to personally attend is not well-taken. The Court similarly feels compelled to comment on the incongruity of Petitioner's attempts to expedite adjudication of this petition to avoid the "detrimental" "loss of relationship" with his children alongside his vehement protests against appearing in person for the very court hearing that could enable the relocation of his children to Germany to live with him.

[6] However, if Command denies Petitioner's leave request, the Court will continue the hearing date until Petitioner is permitted to appear (presumably this is a date between June–July). Respondent indicated at the hearing on the motion that she will stipulate to such a continuance as well.

12

1 too financially burdensome, the Court again finds the facts presented belie Petitioner's claims.
2 Notably, cases cited by Petitioner in support of his proffer of financial burden are distinguishable
3 for the reasons previously identified (i.e., Petitioner's annual salary estimated at $120,000, and
4 his ability to make monthly support payments to Respondent of approximately $2,000).  As
5 Petitioner has submitted no tangible evidence with respect to his finances, and made no argument
6 at the hearing with respect to his finances, the Court cannot conclude Petitioner would be unable
7 to purchase airfare to attend an important court hearing based solely on his unqualified opinion
8 to that effect.  Indeed, the Court regularly requires parties who seek special accommodations
9 from the Court due to purported financial hardship to substantiate their assertions with an
10 accounting of their income and expenses.  It has often commented to such parties that "numerous
11 litigants in this court have significant monthly expenditures, and may have to make difficult
12 choices as to which expenses to incur, which expenses to reduce or eliminate, and how to
13 apportion their income between such expenses and litigating an action in federal court.  Such
14 difficulties in themselves do not amount to [a financial hardship]."[7]  Kaur v. Comm'r of Soc.
15 Sec., No. 1:22-cv-00367-SAB, 2022 WL 1023975, at *2 (E.D. Cal. Apr. 1, 2022), (collecting
16 cases on establishing entitlement to proceed *in forma pauperis*).  Most importantly, the Court
17 notes that, regardless of whether plans to attend Disneyworld had solidified for Petitioner, the
18 mere fact that he was contemplating and commencing preparations for such a notoriously
19 expensive family vacation (which would necessarily include purchase of a round trip
20 international flight for Petitioner) suggests that purchasing a single round trip ticket to Fresno to
21 attend the upcoming Court hearing — even at the highest quoted rate of $1,600 — is imminently
22 feasible.

23     Furthermore, the Court finds Respondent's argument regarding the potential for
24 Petitioner to secure a flight on the "Patriot Express" for a mere $25 very persuasive.  Even if

---

[7] An example of such financial decisions that may be relevant to the Court's determination of whether purchasing international airfare is prohibitively financially burdensome for petitioner may include Petitioner's approval of certain legal fees.  For example, while Petitioner argues "incur[ring] travel expenses in addition to his already *substantial legal fees attendant with this litigation* is onerous" (ECF No. 39 at 7 (emphasis added)), the Court observes that Petitioner made the financial decision to approve billing in this matter for four separate attorneys to prepare for and appear at this hearing (whereas it was sufficient for a single attorney to appear at the same matter on behalf of Respondent).

1  there is a possibility Petitioner would not be able to fly via the Patriot Express, due to its "space
2  available" restrictions, it seems misleading to this Court for Petitioner to omit any reference or
3  argument with respect to this integral military service whatsoever.
4       On this record, Petitioner's request to appear via videoconference on this basis must be
5  denied.

### c. Health Condition

7       As with Petitioner's other proffers of burden, Petitioner submitted no substantive
8  evidentiary support with his briefing or at the hearing (beyond his own declaration) for his
9  contention that his ulcerative colitis would render an international flight too burdensome.
10  Petitioner proffers his condition was "severe enough" to disqualify him from an unidentified
11  "initial air force specialty," though clearly not severe enough to warrant a medical discharge
12  from the Air Force entirely.[8]  Again, importantly, the fact that Petitioner was considering and
13  willing to make an international trip to facilitate a Disneyworld vacation tends to cut against any
14  finding that his medical condition is so prohibitively difficult that he cannot endure an
15  international flight for purposes of attending a court hearing on his own petition.  The Court
16  declines to find sufficient good cause to permit remote video testimony on this basis.

### d. Prejudice to Respondent

18       Finally, Petitioner argues that Respondent will not be prejudiced by allowing Petitioner
19  (and his witnesses) to testify by videoconference, because he would still be testifying in open
20  court, under oath, and subject to cross-examination.  However, the Court finds Respondent has
21  the better argument.
22       As Petitioner has acknowledged, the Court is the ultimate fact-finder in this matter and it
23  will be within the province of the Court to give weight to the evidence, including testimony.
24  (See ECF No. 39 at 8.)  As Respondent has noted, Petitioner is "the single most important
25  witness in the upcoming evidentiary hearing" on his petition; "[h]is sincerity, honesty, and

---

[8] Additionally notable to the Court is that, by Petitioner's own admission, he has taken international flights on a number of occasions, including the first time he was stationed in Germany in 2012, his return to the United States in 2015, his flight back to Germany in 2020, his round-trip flight for a training event in Nevada in 2021, as well as significant travelling throughout Europe in 2020.  (See ECF No. 38 at 4, 5, 8.)  Yet none of this travel was too burdensome to be managed.

14

integrity are at issue." (ECF No. 40 at 1.) The Court agrees on both points. Credibility will be of utmost importance at the May 25 hearing. Indeed, in a custody case invoking the Hague Convention, not unlike the instant matter, the Ninth Circuit recognized the district court's findings of fact "turn on credibility determinations" and accorded "heightened deference" to the district court's discretion to make such determinations, based on "the fact finder's unique opportunity to observe the demeanor of the witnesses." Valenzuela, 736 F.3d at 1176. Here, the Court finds observations of Petitioner limited by the constraints of video, as compared to a full view of Petitioner during in-person testimony, is simply inadequate for purposes of assessing his veracity and what weight to accord his testimony. Petitioner is too integral a witness in this matter. And, as the Court noted at the hearing on this motion, the instant petition deals with the lives of children and parents, a matter this Court takes seriously. Accordingly, the Court finds it is imperative that Petitioner testify in support of his own petition in person.

In sum, Petitioner's proffers of hardship in support of his request to give testimony by videoconference at the May 25 hearing are unavailing and do not outweigh the Court's need to assess Petitioner's veracity during in-person testimony or the prejudice that would result to Respondent if Petitioner were permitted to appear by videoconference. Accordingly, Petitioner's request to testify by videoconference is denied.

2. Petitioner's Request for His Parents to Testify by Videoconference

In a single sentence in his motion, Petitioner "requests that witnesses outside of the state of California due to military assignment, or in southern California (*specifically Mr. Krause's parents*) be permitted to testify by video conference." (ECF No. 39 at 7 (emphasis added).) No further argument establishing good cause to permit Petitioner's parents to testify via videoconference is set forth in the briefing. Petitioner's request, therefore, presents an insufficient record.

At the hearing on the motion, Petitioner submitted two proffers of good cause for his parents to testify via videoconference: (1) COVID concerns, particularly where they reside, and (2) gas costs render a commute to Fresno prohibitively costly. The Court rejects both of these arguments.

As an initial matter, the Court rejects as unsupported Petitioner's counsel's assertion that there has been a recent spike in COVID cases in California. While the Court does not dispute that COVID remains a health concern for many individuals, counsel's representation of a recent "spike" is simply not supported. See, e.g., CALIFORNIA ALL, TRACKING COVID-19 IN CALIFORNIA - CORONAVIRUS COVID-19 RESPONSE, https://covid19.ca.gov/state-dashboard/#latest-update (last visited Apr. 27, 2022). Notably, Petitioner's parents may have been planning to attend the Disneyworld trip with Petitioner and the children.[9] Clearly, if they do not have concerns about COVID with respect to traveling via commercial airline and attending a heavily populated theme park, the Court cannot credit their COVID concerns with respect to appearing in person in a largely unoccupied federal courthouse still operating with limited staff due to ongoing COVID precautions. Most importantly, however, the record lacks any proffer of good cause or evidentiary support for Petitioner's request. At the hearing, Petitioner stated his parents, over age 60, had "COVID concerns." Yet, Petitioner did not contend his parents have any health conditions that would make them susceptible to contracting COVID, nor was any other pertinent information provided — such as whether the Krauses are vaccinated, whether they isolate, how often they go out, or other precautions, if any, are taken. Without more, the Court simply cannot determine the Krauses' "concerns about COVID" constitute sufficient good cause to permit their testimony by videoconference. Additionally, the Courts notes a dearth of other relevant information that might support a good cause finding for permitting the Krauses to testify via videoconference, *e.g.*, the expected length or intended subject matter of the anticipated testimony, such that the Court could assess what degree of prejudice may result to Respondent if the Krauses were permitted to appear by videoconference and the degree to which their in-person testimony is vital to the Court's ultimate ruling.

Similarly, the Court does not find "increased gas prices" constitute sufficient "good

---

[9] The Court acknowledges this contention asserted by Respondent in her briefings and at the hearing is disputed by Petitioner, and that the evidentiary support for the contention amounts to double-hearsay. In light of the "relaxed" standards of evidence, as discussed at the hearing, however, the Court acknowledges the admissibility of the statements without assigning any weight to them at this time, and further acknowledges the potential for the parties to supplement the record with appropriate evidentiary support as to the issue of whether Petitioner's parents ever intended to attend Disneyworld/Disneyland with Petitioner and the children.

cause" in this matter. Again, contrary to counsel's representations, Fresno is located in Central California; the drive from Los Angeles to Fresno, is less than four hours. See, e.g., GOOGLE, https://www.google.com/search?q=directions+from+los+angeles+to+fresno... (last visited Apr. 27, 2022). The Court declines to find a day trip to Fresno amounts to such a financial hardship that the Krauses (or their son) cannot fund an in-person appearance to testify on such an important family matter.

Accordingly, Petitioner's request for his parents to give testimony via videoconference is denied.[10]

### 3. Petitioner's Request for "Witnesses Outside the State of California due to Military Assignment" to Testify by Videoconference

As the heading of the briefing suggests, Petitioner does not identify any particular "witnesses outside the State of California" that he intends to call at the May 25 hearing; nor does Petitioner submit any showing of good cause related to each of these unidentified individuals. The Court's March 31, 2022 pretrial order permitted the parties to brief any "dispute over whether *any witness* shall be allowed to testify via video rather than in-person." (ECF No. 38 at 3 (emphasis added).) Inherent in these instructions is the requirement that any such briefing must identify and address the dispute as it pertains to each individual witness. Petitioner's request fails to identify any particular individual, a good cause proffer as to that individual regarding their unique circumstances requiring appearance by videoconference, or the dispute as to that proposed witness. On this basis alone, the blanket request must be denied.

Petitioner's argument at the hearing that his intended out-of-state witnesses were properly identified in his initial disclosures is not well-taken. As Respondent correctly noted, the initial disclosures — which the parties were not even supposed to file with the Court and, as such, were not considered within the context of the instant motion — cannot reasonably be considered an

---

[10] Nonetheless, the denial with respect to the Krauses' testimony is without prejudice to a renewed request that may be based on an adequately supplemented record or stipulation by opposing counsel. Should Petitioner wish to supplement the record, he is advised that any request to do so must be timely made, so as to ensure the Court and opposing counsel are given sufficient time to address the proffered evidence and issues. To that point, the parties are cautioned that if a request to supplement the record is submitted on the eve of the evidentiary hearing or otherwise provides insufficient notice for a response, such request shall be summarily denied.

1 intended witness list as it exhaustively includes all "individuals likely to have discoverable
2 information." (See ECF No. 24 at 2–10.) Even apart from this glaring deficiency, the list
3 identifies potentially fourteen individuals in the military, none of whom Petitioner has provided
4 addresses for, thus it is impossible to ascertain which of these individuals reside outside of
5 California. While noting — as with many issues — the parties may stipulate that certain
6 witnesses are permitted to appear via videoconference (see ECF No. 38 at 3), they must
7 nevertheless identify to which individuals they are stipulating. Petitioner's request is denied.

### D. Petitioner's Motion for an Order to Show Cause (ECF No. 41)

As an initial matter, the Court notes Petitioner filed a motion for an order to show cause at 9:57 a.m., exactly three minutes prior to the hearing on the instant motion, and this motion is not properly before the Court with respect to the instant matter. To the extent Petitioner's motion for an order to show cause also includes a request that the Court permit reply briefing by Petitioner with respect to the *instant* motion to appear by videoconference (see ECF No. 41-3 at 2), Petitioner's request is denied as untimely. Surely, Petitioner and his counsel cannot have entertained any practical expectation that their last-minute filing — here, seeking to submit declarations containing evidence pertinent to the instant motion a mere *three minutes* prior to the hearing on the motion — would reach the Court or Respondent in time or permit any conceivable opportunity to respond, and such presumptively non-arguable matters do not in themselves constitute meaningful responses. Particularly in light of the fact that the information included in the declarations was known to Petitioner as early as April 13, 2022, this last-minute submission is not well-taken. Petitioner and his counsel are therefore admonished that last-minute filings lacking a clear demonstration of good cause for their delayed filing will likely be unsuccessful. Nonetheless, if the parties wish to supplement the record with respect to these ongoing disputed issues within a reasonable time, as noted in the prior footnotes, the Court will consider such a joint request from the parties.

As to the remainder of the motion, the Court declines to issue any order until Respondent has had an opportunity to submit responsive briefing, in accordance with the Local Rules.

///

# IV.

# ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's motion for taking testimony of foreign witnesses in open court by videoconference (ECF No. 39) is DENIED as follows:

    a. Petitioner's request to give testimony at the May 25, 2022 evidentiary hearing by contemporaneous transmission through videoconference is DENIED;

    b. Petitioner's request that his parents be permitted to give testimony at the May 25 hearing is DENIED, without prejudice to a renewed request based on an adequately supplemented record; and

    c. Petitioner's blanket request that unidentified "witnesses outside the State of California due to military assignment" be permitted to give testimony at the May 25 hearing is DENIED.

2. The parties may stipulate to the testimony by videoconference of any specific witness that is adequately identified; and

3. Petitioner's untimely request that the Court permit reply briefing with respect to the instant motion to appear by videoconference is DENIED.

IT IS SO ORDERED.

Dated: **April 29, 2022**

UNITED STATES MAGISTRATE JUDGE