# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KRAUSE,<br><br>       Petitioner,<br><br>    v.<br><br>TARA KRAUSE,<br><br>       Respondent. | Case No. 1: 21-cv-01706-JLT-SAB<br><br>ORDER RE PETITIONER'S ORDER TO SHOW CAUSE FOR TEMPORARY RESTRAINING ORDER AND REQUEST FOR CONTEMPT SANCTIONS<br><br>ORDER REQUIRING RESPONDENT TO SURRENDER CHILDREN'S PASSPORTS AND PASSPORT CARDS ON OR BEFORE MAY 25, 2022<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER AND CONTEMPT SANCTIONS BE DENIED<br><br>(ECF Nos. 41, 47, 53, 54)<br><br>**OBJECTIONS DUE WITHIN 14 DAYS** |

## I.

## BACKGROUND

This action proceeds on Michael Krause's ("Petitioner") verified petition for the return of his children S.K., P.K., and A.K. (the "Children"), to Petitioner (ECF No. 1), brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act, Pub. L. No. 100-300, 102 Stat. 437 (1988)

(codified as amended at 22 U.S.C. §§ 9001 *et seq.*) ("ICARA"), which implements the Convention. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302, for the preparation of findings and recommendations or other appropriate action. (ECF No. 17.) On January 21, 2022, the Court entered a stipulated order that included an agreed to term that neither party would be allowed to remove the Children that are the subject of this litigation from Merced County during the pendency of the litigation. (ECF Nos. 22, 23.) An evidentiary hearing is set to begin on May 25, 2022.

On April 27, 2022, Petitioner filed, what was entitled on the docket as a memorandum in support. (Pet'r's Mot. OSC TRO ("Mot."), ECF No. 41.) The filing was not docketed as a motion, and was not set for hearing by the Petitioner nor the Court. The main filing's caption page identified the filing as "Petitioner's Memorandum in Support of Order to Show Cause." (ECF No. 41 at 1.) The filing then proceeded to request, under the legal standards applicable to temporary restraining orders, that Respondent be directed to return the children's passports for failing to adhere to the Court's stipulated order requiring Respondent to not remove the children from Merced County. (Id. at 1-5.) The filing also sought a finding of contempt against Respondent, and $2,500 in attorneys' fees. Finally, the filing, in part, included a declaration by Petitioner requesting "Leave of Court to respond to the numerous misrepresentations made in Respondent's Opposition to Michael Krause's Motion to Testify in Open Court by Video Conference." (ECF No. 41 at 3.)[1]

On May 16, 2022, Respondent filed an opposition brief. (Resp't's Opp'n ("Opp'n"), ECF No. 47.) On May 17, 2022, Petitioner filed a reply brief. (Pet'r's Reply ("Reply"), ECF No. 53.) Savannah Wadsworth, Richard Min, Michael Banuchis, and Samantha Jacobson,

---

[1] The document was filed on the morning of April 27, 2022, at 9:57 a.m., just before the Court held the hearing on the motion to present video testimony. (ECF No. 41, 42.) In the order on the motion to present video testimony, the Court stated it would not accept the untimely filing as to that request. As to the remainder of the filing, the Court indicated it "declines to issue any order until Respondent has had an opportunity to submit responsive briefing, in accordance with the Local Rules." (ECF No. 43 at 18. ) Thereafter, the Court received no additional filings or communications related to the motion. When a motion *in limine* was filed on May 11, 2022, and was set for hearing less than one week later (ECF No. 45), the Court construed this filing as a motion for temporary restraining order (ECF No. 46 at 2) and found it prudent to set a briefing schedule and hear any outstanding issues related to the motion at the same hearing. (See ECF No. 46 ("To the extent the dispute that is the subject of the Petitioner's motion for temporary restraining order is still outstanding between the parties, the Court shall also set a further briefing schedule on the motion and hear any arguments concerning such motion at the hearing on May 18, 2022.").)

appeared on behalf of Petitioner.  Drexwell Jones appeared on behalf of Respondent.

## II.

## LEGAL STANDARD

### A.      Inherent Authority, Contempt Sanctions, and Other Authority to Issue Sanctions or Other Appropriate Orders for Orderly Litigation

The Federal Rules of Civil Procedure provide that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  To effectuate this purpose, the rules provide for sanctions against parties that fail to comply with court orders or that unnecessarily multiply the proceedings.  See, e.g., Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 37(b).  Rule 16(f) authorizes the Court to issue any just order if a party or attorney fails to obey a scheduling or other pretrial order.  Fed. R. Civ. P. 16(f)(1)(C) ("On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order.").

The Court also possesses inherent authority to impose sanctions to manage its own affairs so as to achieve the orderly and expeditious disposition of cases.  Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).  The Court's inherent power is that which is necessary to the exercise of all others, including to protect the due and orderly administration of justice and maintain the authority and dignity of the Court.  Roadway Exp., Inc. v. Piper, 447 U.S. 752, 764 (1980).  In order to coerce a party to comply with the Court's orders, the Court may issue sanctions for every day that party fails to respond to the Court's orders to show cause.  See Lasar v. Ford Motor Co., 399 F.3d 1101, 1110 (9th Cir. 2005) (discussing court's authority to impose civil sanctions "intended to be remedial by coercing the defendant to do what he had refused to do.").

Similarly, the Local Rules of the Eastern District of California provide that "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court."  E.D. Cal. L.R. 110.  Further, "[i]n the event any attorney subject to these Rules engages in conduct that may warrant discipline or other sanctions, any Judge or

Magistrate Judge may initiate proceedings for contempt under 18 U.S.C. § 401 or Fed. R. Crim. P. 42, or may, after reasonable notice and opportunity to show cause to the contrary, take any other appropriate disciplinary action against the attorney."  E.D. Cal. L.R. 184(a).  "In addition to or in lieu of the foregoing, the Judge or Magistrate Judge may refer the matter to the disciplinary body of any Court before which the attorney has been admitted to practice."  Id.

Pursuant to 28 U.S.C. § 636(e)(6)(B)(iii), in a case where the parties have not consented to the jurisdiction of a United States magistrate judge and where a party's conduct "constitutes a civil contempt, the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified."  28 U.S.C. § 636(e)(6).

### B.     Temporary Restraining Order

Temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 439 (1974); Whitman v. Hawaiian Tug and Barge Corp./Young Bros. Ltd. Salaried Pension Plan, 27 F.Supp.2d 1225, 1228 (D. Haw. 1998) (same. The factors considered for issuing a temporary restraining order are the same as the standards for issuing a preliminary injunction.  Ohio Republican Party v. Brunner, 543 F.3d 357, 361 (6th Cir. 2008); Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

"A preliminary injunction is an extraordinary remedy never awarded as of right."  Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008) (citation omitted).  In Winter, the Supreme Court held that "[a] court may grant a preliminary injunction only if the plaintiff establishes four elements: (1) likelihood of success on the merits; (2) likelihood of suffering irreparable harm absent a preliminary injunction; (3) the balance of equities tips in plaintiff's favor; and (4) injunctive relief is in the public interest."  Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015); Leigh v. Salazar, 677 F.3d 892, 896 (2012).  "To receive a preliminary injunction,

1    [a plaintiff is] required to show either a likelihood of success on the merits and the possibility of

2    irreparable injury, or that serious questions going to the merits were raised and the balance of

3    hardships tips sharply in its favor."   In re Focus Media Inc., 387 F.3d 1077, 1085 (9th Cir. 2004)

4    (quoting Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1119 (9th Cir.1999)).  "These

5    standards 'are not separate tests but the outer reaches of a single continuum.' "  Stuhlbarg Int'l

6    Sales Co., 240 F.3d at 840 (quoting International Jensen, Inc. v. Metrosound U.S.A., 4 F.3d 819,

7    822 (9th Cir.1993)).  An injunction may only be awarded upon a *clear showing* that the plaintiff is

8    entitled to relief.   Winter, 555 U.S. at 22 (quoting Mazurek v. Armstrong, 520 U.S. 968, 972

9    (1997)) (emphasis added).

10                                                 **III.**

11                                          **DISCUSSION**

12       **A.    The Parties' Arguments**

13       Petitioner proffers that on April 21, 2022, Respondent informed Petitioner that she had

14   temporarily taken the Children out of Merced County.  (Mot. 1.)  Counsel requested email

15   confirmation that Respondent had returned the Children to Merced, County.  However, no such

16   confirmation was provided by either of Respondent's attorneys representing her in both this and

17   the California state court actions.  (Mot. 2.)  Petitioner also claims to have heard Respondent was

18   planning on taking the Children to Mexico.

19       Respondent counters that Petitioner is "upset because his children celebrated the Easter

20   holiday in a mountain cabin located outside of the County of Merced"; that he spoke with the

21   Children twice during the short trip; that he did not object beforehand when Respondent told

22   Petitioner she planned to take the Children to the mountains where mobile reception may be

23   limited; and only afterward did Petitioner complain.  (Opp'n 1.)  Respondent argues Petitioner's

24   claim he believed Respondent was taking the Children to the mountains in the County of Merced

25   is insincere because he grew up in California, visited the county multiple times, and should know

26   there are no "mountains" in the county such that mobile reception would be intermittent.  (Opp'n

27   1-2.)  Respondent also contends the "completely unfounded hearsay statement" regarding taking

28   the Children to Mexico does not rise to the level of warranting Court intervention; Respondent

1   has no intention of taking the Children to Mexico; and she has absolutely no connection to

2   Mexico that would warrant a fear she would abscond there.  (Opp'n 2; Decl. Tara Krause Decl. ¶

3   10.)  Finally, Respondent "readily admits her previous ignorance regarding the Court's order . . .

4   [s]he did not knowingly violate the court's order . . . .; [and] now understands the order is in

5   place and is happy to abide by it."  (Opp'n 2; Tara Krause Decl. ¶¶ 8-9.)

6          In Reply, Petitioner argues the contention that there are no mountains in Merced County

7   is false; Petitioner was under the reasonable believe that she was going to one of the mountains

8   in Merced County; Respondent should have been forthcoming; and Petitioner is not required to

9   harangue Respondent with questions regarding the children and her whereabouts.  Respondent

10  contends that on April 25, 2022, Petitioner's counsel emailed Respondent's counsel for

11  confirmation that she had returned to Merced County.  In that email, counsel were reminded of

12  the obligation not to remove the Children from the County.  That same day, Respondent  called

13  Petitioner and "verbally berated him" about the circumstances.  (Reply 2.)  Despite representing

14  that she was aware of the Court order on April 25, 2022, at the latest, Petitioner claims he

15  learned on April 30, 2022, that Respondent left Merced County again to go to Sacramento.

16  (Michael Krause Reply Decl. ¶ 4.)

17          **B.     The Court Finds Respondent has Violated the Court's Order and**
18          **Modification of  the Order is Proper and Just to Ensure Future Compliance**
            **and Security of the Children During the Pendency of this Hague Convention**
19          **Litigation or Until Further Order of the Court**

20          On January 19, 2022, the parties filed a stipulated agreement pertaining to scheduling and

21  other matters in this action, which the Court accepted and entered on January 21, 2022.  (ECF

22  Nos. 22, 23.)  The parties' stipulation specified as follows:

23                  7.     Provisional Remedies During Pendency of Litigation. In
                    accordance with ICARA, 22 U.S.C. § 9004, the following
24                  provisional remedies shall remain in effect with respect to the
                    parties' children during the pendency of this litigation:
25
                            A.     Both parties are prohibited from removing or
26                  causing the removal of the parties' three children, S.K. and P.K.
                    born in 2011, and A.K., born in 2014 from Merced County,
27                  California.

28  (ECF No. 22 at 2-3.)  The order entering the parties' stipulation stated that: "In accordance with

1   ICARA, 22 U.S.C. § 9004, both  parties  are  prohibited  from removing or causing the removal

2   of the parties' three children, S.K., P.K., and A.K., from Merced County, California during the

3   pendency of this litigation." (ECF No. 23 at 2.)

4            In consideration of the factual circumstances presented in briefing that are summarized

5   above, and the matters discussed at the hearing held on May 18, 2022, the Court finds it

6   appropriate, given the admitted violation of this Court's order and the purpose of this Hague

7   Convention act as filed by Petitioner, to modify the parameters of the January 21, 2022 order and

8   require surrender of the Children's passports and/or passport cards during the pendency of this

9   litigation.  The Court finds it may appropriately issue such order modifying the terms of the

10  stipulated order as entered in order to make it more effective, given Respondent's demonstrated

11  non-compliance and previously admitted inability to understand the contours of its requirements.

12  Fed. R. Civ. P. 16(f)(1)(C) ("On motion or on its own, the court may issue any just orders . . . if a

13  party or its attorney . . . fails to obey a scheduling or other pretrial order."); Roadway Exp., Inc.,

14  447 U.S. at 764; Fed. R. Civ. P. 1.

15            The Court finds Respondent's argument that it was somehow Petitioner's responsibility

16  to know that it was impossible to take the children camping or to the mountains in the County of

17  Merced to be wholly unpersuasive.  The Court declines to play the role of a geologist, and does

18  not find it necessary to make a definitive ruling as to whether there are "mountains" in Merced

19  County.  However, based on the Court's own understanding of the area, and the exhibits

20  submitted by Petitioner in reply, the Court finds Respondent's contention that Petitioner knew a

21  trip to the mountains meant a trip outside of Merced County, to be unpersuasive.  "Mountains

22  generally are understood to be larger than hills, but the term has no standardized geological

23  meaning."  *Mountain*, Britannica, available at https://www.britannica.com/science/mountain-

24  landform (last accessed May 20, 2022).  "Most geologists classify a mountain as a landform that

25  rises at least 1,000 feet (300 meters) or more above its surrounding area."  *Mountains*, National

26  Geographic,  available at  https://www.nationalgeographic.com/science/article/mountains  (last

27  accessed May 20, 2022).  "The Diablo Range is a mountain range in the California Coast Ranges

28  subdivision of the Pacific Coast Ranges in northern California . . . The range passes through

Contra Costa, Alameda, San Joaquin, Santa Clara, Stanislaus, **Merced**, San Benito, Fresno, Monterey, and Kings Counties." Diablo Range, Wikipedia, available at https://en.wikipedia.org/wiki/Diablo_Range (last accessed May 20, 2022) (emphasis added); see also *Merced County*, PeakVisor, available at https://peakvisor.com/adm/merced-county.html (last accessed May 20, 2022) ("There are 23 named mountains in Merced County."). It would not be unreasonable for Petitioner to assume a camping or cabin trip in the "mountains" could be located near where the Children were located and directed to remain, in Merced County. Further, as noted the hearing, compliance with this Court's order is not a requirement of the Petitioner to first notify the Respondent of the order but for the Respondent, or any party for that matter, to know and comply with the order themselves.

It was readily apparent from the parties' stipulation and the Court's order that Respondent was not to remove the Children from Merced County, and it was easily identifiable by road signage, or common sense from the time Respondent has spent in Merced County and nearby counties, that she had left the County of Merced. Accordingly, to prevent future harm that may result from any further violation of the Court's order, the Court shall modify the order and now order the surrender of the Children's passports and/or passport cards and to not obtain any new ones during the pendency of this action. Fed. R. Civ. P. 16(f)(1)(C) Roadway Exp., Inc., 447 U.S. at 764; Fed. R. Civ. P. 1.

The Court finds the most prudent course of action based on the status of the action, the goals and standards for a Hague Convention proceeding, and the forthcoming evidentiary hearing set in less than one week, is to issue this order requiring the surrender of the passports and passport cards and to order that no new passports or passport cards be obtained pursuant to the Court's authority under Rule 16. As explained in the following sections, the Court shall recommend denying the Petitioner's request for a temporary restraining order and declines to certify the violation of the order as a civil contempt to the District Judge. Finally, as discussed below, the Court's denial or recommendation of denial of the Petitioner's request for attorneys' fees as related to the contempt finding is without prejudice to a later filed sanctions motion that is more properly heard when fully briefed and in conjunction with other potentially forthcoming

1    sanction motions by both parties.  In this regard, the Court notes that an attorneys' fee award

2    may still be properly awarded based on the Court's order here under Rule 16.  See Fed. R. Civ.

3    P. 16(f)(2) ("Instead of or in addition to any other sanction, the court must order the party, its

4    attorney, or both to pay the reasonable expenses--including attorney's fees--incurred because of

5    any noncompliance with this rule, unless the noncompliance was substantially justified or other

6    circumstances make an award of expenses unjust.").

7    **C.     The Court Declines to Find or Certify a Finding of Civil Contempt**

8    Pursuant to 28 U.S.C. § 636(e)(6)(B)(iii), in a case where the parties have not consented

9    to the jurisdiction of a United States magistrate judge and where a party's conduct "constitutes a

10   civil contempt, the magistrate judge shall forthwith certify the facts to a district judge and may

11   serve or cause to be served, upon any person whose behavior is brought into question under this

12   paragraph, an order requiring such person to appear before a district judge upon a day certain to

13   show cause why that person should not be adjudged in contempt by reason of the facts so

14   certified."  28 U.S.C. § 636(e)(6).[2]  The asserted contempt is civil in nature where the contempt

15   is sought to compel a party to comply or to compensate an aggrieved party for the failure of an

16   adverse party to comply.  See United States v. Asay, 614 F.2d 655, 659 (9th Cir. 1980).  "In a

17   civil contempt action, '[t]he moving party has the burden of showing by clear and convincing

18   evidence that the contemnors violated a specific and definite order of the court.  The burden then

19   shifts to the contemnors to demonstrate why they were unable to comply.' "  Federal Trade

20   Comm'n v. Enforma Nat. Prod., Inc., 362 F.3d 1204, 1211 (9th Cir. 2004) (citations omitted).

21   To find civil contempt, "the court need only (1) have entered a clear and unambiguous order, (2)

22   find it established by clear and convincing evidence that the order was not complied with, and

23   (3) find that the alleged contemnor has not clearly established his inability to comply with the

24   terms of the order."  Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995).  There need

---

25   [2]  But see United States v. Geary, No. CV. 05-00135 DAE-BMK, 2007 WL 1266069, at *2–3 (D. Haw. Apr. 30,
26   2007) ("Fed.R.Civ.P. 72 divides pretrial matters before a Magistrate Judge into two categories: those that are
     "dispositive of a claim or defense" and those that are nondispositive. A Magistrate Judge may hear and determine
27   nondispositive matters, but he or she may only make findings and recommendations to the district court on
     dispositive matters . . . A typical contempt motion, such as that present in this case, requesting sanctions for alleged
28   discovery abuses that does not involve a final determination of a claim being litigated is not a dispositive matter.").

1  not be a willful violation of the order in order for the court to find civil contempt.  Asay, 614

2  F.2d at 661 (citing McComb v. Jacksonville Paper Co., 336 U.S. 187 (1948)).

3       Civil contempt is meant to compel obedience with a court order, or to compensate the

4  contemnor's adversary for the injuries resulting from the non-compliance.  Falstaff Brewing

5  Corp. v. Miller Brewing Co., 702 F.2d 770, 778 (9th Cir. 1983); Shell Offshore Inc. v.

6  Greenpeace, Inc., 815 F.3d 623, 629 (9th Cir. 2016).  The district court has wide latitude in

7  deciding whether there has been contemptuous defiance of one of its orders.  Stone v. City of

8  San Francisco, 968 F.2d 850, 856 (9th Cir. 1992).  "The Ninth Circuit determined the Court has

9  authority to order coercive fines and remedial sanctions for civil contempt." Dionisio v. Midland

10  Credit Mgmt., No. 1:19-CV-0190-DAD-JLT, 2019 WL 2420403, at *2 (E.D. Cal. June 10, 2019)

11  (citing Shell Offshore, 815 F.3d at 628-30).  "A court may wield its civil contempt powers for

12  two separate and independent purposes: (1) 'to coerce the defendant into compliance with the

13  court's order'; and (2) 'to compensate the complainant for losses sustained.' " Shell Offshore,

14  815 F.3d at 629 (quoting United States v. United Mine Workers of Am., 330 U.S. 258, 303–04,

15  (1947)).

16       A coercive civil contempt order must include a "purge" condition which provides the

17  contemnor with an opportunity to comply with the order before payment of the fine or other

18  sanction becomes due.  Shell Offshore, 815 F.3d at 629 ("Because civil compensatory sanctions

19  are remedial, they typically take the form of unconditional monetary sanctions; whereas coercive

20  civil sanctions, intended to deter, generally take the form of conditional fines . . . Thus, the

21  ability to purge is perhaps the most definitive characteristic of coercive civil contempt."); De

22  Parcq v. U.S. District Court for the S. Dist. of Iowa, 235 F.2d 692, 699 (8th Cir.1956) ("[C]ivil

23  contempt is conditional in nature and can be terminated if the contemnor purges himself of the

24  contempt.").  In imposing civil contempt sanctions, the court must impose the most minimal

25  sanction necessary to coerce the contemnor to comply with the order.  Whittaker Corp. v.

26  Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992).  Where the objective of the contempt order is

27  to ensure the contemnor's compliance, the court must "consider the character and magnitude of

28  the harm threatened by continued contumacy, and the probably effectiveness of any suggested

sanction in bringing about the desired result." <u>Bademyan v. Receivable Mgmt. Servs. Corp.</u>, No. CV–08–00519, 2009 WL 605789, at *3 (C.D. Cal. Mar. 9, 2009).  "Substantial compliance with the court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply."  <u>In re Dual-Deck Video Cassette Recorder Antitrust Litig.</u>, 10 F.3d 693, 695 (9th Cir. 1993) (citation and internal quotations omitted).

Through this order, the Court will grant the requested condition of surrendering the passport.  Respondent is no longer in violation of a court order necessitating coercion to comply.  While ignorance of the order is not an excuse, the Respondent's declaration that she was ignorant of the requirement has *some* reasonable ring of truth in that she may have been more focused on the parallel state court divorce case's requirements not to leave the State of California, given the parties ongoing discussions concerning Petitioner's alleged attempts to plan a trip to Disneyworld (Tara Krause Decl. ¶¶ 8-9).  Additionally, Respondent did communicate with Petitioner regarding a trip to the cabin, and Petitioner did speak with the children during the time period, once on Easter on April 17, 2022, and once on April 21, 2022.  For these and other reasons discussed throughout this order, the Court finds a finding of contempt to be unwarranted.

Accordingly, the Court declines to certify a finding of contempt, and to the extent a recommendation of a denial of Petitioner's request for a contempt sanction is necessary, recommends denying the request for contempt monetary sanctions in the form attorneys' fees at this time.  As for monetary sanctions specifically, the Court has been made aware that both sides will be likely filing motions for additional sanctions not based on the issues related to this order.  The Court finds good cause to address all of the parties' requests for sanctions collectively based on a full record and completed briefing.  This matter is more appropriately dealt with in conjunction with those motions, when filed.[3]

Further, in this regard, the Court finds the request for sanctions not sufficiently briefed, which provides an additional reason to hold full consideration of a fee award until this and other

---

[3]  Even if other sanctions motions are not filed, Petitioner may still renew this request in an appropriately noticed and briefed motion, compliant with the Local Rules.

requests for monetary sanctions are briefed.  Specifically, the Court notes Petitioner's request for contempt monetary sanctions states: "As detailed in the accompanying declaration of Petitioner's counsel, Petitioner seeks $2,500 in legal fees as a remedy for Respondent's contempt." (Mot. 6.) However, there is no accompanying discussion of the legal fees, the basis for that amount, a description of the hours expended or other information typically required for the Court to consider, and for the opposing party to address in response.  (See Decl. Savannah C. Wadsworth, ECF No. 41-2 at 1-2.)  Further, while the introduction of Petitioner's motion requests the Court hold Respondent in contempt (Mot. 2), the proposed order submitted only requests an order finding Respondent in contempt in the event she fails to comply with the temporary restraining order, and makes no request for contempt sanctions in any amount (ECF No. 41-3 at 2.)  Thus, based on the filings and record before the Court, the Court does not find any amount of sanction or award of attorneys' fees and costs to be appropriate.

### D.    The Court Recommends Denying Petitioner's Request for a Temporary Restraining Order In Light of this Order and for Lack of Irreparable Harm

The parties largely agree as to the legal standards applicable to temporary restraining orders.  (Mot. 2-3; Opp'n 2.)  Respondent does not generally dispute any of the relevant factors aside from irreparable harm.  (Opp'n 2-3.)

At this juncture, for the reasons explained throughout this order, and given this order shall grant the primary requested relief sought by Petitioner when he filed the motion for a temporary restraining order, the Court finds a temporary restraining order is unnecessary to preserve the status quo and to prevent irreparable harm to the Petitioner, and recommends the motion be denied.  See Granny Goose Foods, Inc., 415 U.S. at 439.

## IV.

## ORDER AND RECOMMENDATION

Accordingly, IT IS HEREBY ORDERED that:

1.    Respondent is ordered to surrender the passport and passport cards of the Children, S.K., P.K., and A.K., to the Clerk of the Court located at 2500 Tulare Street, Fresno, CA 93721, **no later than May 25, 2022**;

12

2.     Not obtain any new passport or passport cards during the pendency of this case for Children S.K., P.K., and A.K;

3.     Neither party shall remove S.K., P.K., and A.K., from Merced County, California, during the pendency of this litigation, absent a stipulation between the parties filed with the Court, or a further order from the Court;

4.     The restriction on travel outside of Merced County does not apply to travel necessary for the children to appear for any *in camera* hearing in this matter, or as necessary for the care of the Children during the course of the evidentiary hearings in this matter, as may be agreed to by the parties;

5.     The Court declines to certify a finding of contempt to the District Judge; and

6.     Petitioner's request for contempt sanctions or other sanctions in the form of attorneys' fees is DENIED without prejudice.

Further, IT IS HEREBY RECOMMENDED that Plaintiff's motion for a temporary restraining and finding of contempt be DENIED.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties. Such a document should be

///
///
///
///
///
///
///
///
///
///

1 ///

2 ///

1   captioned "Objections to Magistrate Judge's Findings and Recommendations."   The district

2   judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. §

3   636(b)(1)(C).   The parties are advised that failure to file objections within the specified time may

4   result in the waiver of rights on appeal.   Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014)

5   (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).[4]

6

7   IT IS SO ORDERED.

8   Dated:   **May 20, 2022**

_____
UNITED STATES MAGISTRATE JUDGE

---

[4]  The Court reminds the parties they may seek reconsideration of any aspects of the (non-recommendation) aspects of this order by the District Judge within fourteen days of the issuance of this order.  Local Rule 303.  Further, the Court does not mean to coerce action by any party, however, given the surrender of the passports was the primary relief sought by Petitioner, it may be prudent for Petitioner to consider withdrawing the motion for a temporary restraining order and request for contempt sanctions, perhaps after it is clear or agreed that no request for reconsideration of the Court's order herein is sought by Respondent.  That would obviate any need for an objection period, consideration by the District Judge on these limited issues, and the need for further consideration of a preliminary injunction by the District Judge.  Petitioner is reminded that the denial of monetary sanctions is without prejudice to a fully briefed motion for sanctions under Rule 16.