# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KRAUSE,<br><br>   Petitioner,<br><br>   v.<br><br>TARA KRAUSE,<br><br>   Respondent. | Case No. 1: 21-cv-01706-JLT-SAB<br><br>ORDER GRANTING RESPONDENT'S MOTION FOR SUBPOENAS AND ISSUING ORDER REQUIRING APPEARANCE AND PRODUCTION OF DOCUMENTS BY LT. COL. MIKITA BROWN & MICHAEL KRAUSE<br><br>ORDER VACATING SEPTEMBER 21, 2022 HEARING<br><br>(ECF Nos. 85, 86, 89) |

**I.**

**INTRODUCTION AND BACKGROUND**

This action proceeds on Michael Krause's ("Petitioner") verified petition for the return of children to Petitioner (ECF No. 1), brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act, Pub. L. No. 100-300, 102 Stat. 437 (1988) (codified as amended at 22 U.S.C. §§ 9001 et seq.), which implements the Convention. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. (ECF No. 17.)

An evidentiary hearing was set to begin on May 25, 2022. On May 17, 2022, Tara Krause ("Respondent") filed a motion to continue the May 25, 2022 evidentiary hearing. (ECF

1

No. 50.) Respondent argued that for Petitioner to maintain the Hague Convention proceeding in order to negotiate the division of marital assets in a divorce proceeding in California is manifestly unjust, and new evidence raised substantial doubt whether the petition was being maintained on proper grounds for a proper purpose. On May 19, 2022, the Court denied the motion to continue, after hearing from the parties at a May 18, 2022 hearing on the motions *in limine*. (ECF Nos. 54, 68 ("an evidentiary hearing may actually be necessary to determine the issue of mootness.").)

Then, on May 23, 2022, at 10:22 p.m., Petitioner filed a motion to dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(2). (ECF No. 70.) In response, on May 24, 2022, Respondent filed a response requesting that this matter be dismissed with prejudice but conditioned on an award of attorneys' fees and costs. (ECF No. 71.) On May 24, 2022, the Court converted the evidentiary hearing into a status hearing on forthcoming motions. (ECF No. 72.)

On June 1, 2022, Petitioner filed a motion for sanctions, and Respondent filed a motion for sanctions, both of which are pending before the Court. (ECF Nos. 78, 79.) An evidentiary hearing is set for September 30, 2022, pertaining to matters related to the cross-motions for sanctions. (ECF Nos. 85, 88.)

Currently before the Court is Respondent's motion for subpoena, filed on September 2, 2022. (ECF No. 86.) The matter is set for hearing on September 21, 2022. (ECF Nos. 85, 86, 88.) On September 14, 2022, Petitioner filed an opposition to the motion. (ECF No. 89.) In light of the fact the Petitioner filed an opposition containing objections that address largely address the potential Privacy Act concerns, and given the proximity to the evidentiary hearing, the Court finds this matter suitable for decision without oral argument, and the September 21, 2022 hearing shall be vacated. For the reasons explained herein, Respondent's motion for subpoenas shall be granted, and the Court shall order Lt. Col. Brown and Petitioner Michael Krause to appear at the September 30, 2022 evidentiary hearing, and produce the documents described herein.

///

## II.

## LEGAL STANDARDS

Rule 45 of the Federal Rules of Civil Procedure authorizes the issuance of a subpoena to command a nonparty to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control. . . ." Fed. R. Civ. P. 45(a)(1)(A)(iii). In response to the subpoena, the nonparty must serve objections to the request before the earlier of the time specified for compliance or fourteen days after the subpoena is served. Fed. R. Civ. P. 45(d)(2)(B.) If an objection is made, the serving party may move for an order compelling compliance in the court for the district where compliance is required. Fed. R. Civ. P. 45(b)(1)(B(i).

It is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34. Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Service Center, 211 F.R.D. 648, 662 (D. Kan. 2003) (quoting Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) that the amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."). Rule 34(a) provides that a party may serve a request that is within the scope of Rule 26. Under the Federal Rule of Civil Procedure 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Relevancy is broadly defined to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Although relevance is broadly defined, it does have "ultimate and necessary boundaries." Gonzales v. Google, Inc., 234 F.R.D.

3

1   674, 680 (N.D. Cal. 2006) (quoting Oppenheimer Fund, Inc., 437 U.S. at 351).  While discovery
2   should not be unnecessarily restricted, discovery is more limited to protect third parties from
3   harassment, inconvenience, or disclosure of confidential documents.  Dart Industries Co., Inc. v.
4   Westwood Chemical Co., Inc., 649 F.2d 646, 649 (9th Cir. 1980).   In deciding discovery
5   disputes, courts must be careful not to deprive the party of discovery that is reasonably necessary
6   to their case.  Dart Industries Co., Inc., 649 F.2d at 680.  "Thus, a court determining the propriety
7   of a subpoena balances the relevance of the discovery sought, the requesting party's need, and
8   the potential hardship to the party subject to the subpoena."  Gonzales, 234 F.R.D. at 680.

9       Rule 45(d)(3)(A) sets forth the bases for a court to quash or modify a subpoena, which
10  provides, in pertinent part, that "[o]n timely motion, the court for the district where compliance is
11  required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; . .
12  . or (iv) subjects a person to undue burden.  Fed. R. Civ. P. 45(d)(3)(A); see also Fed. R. Civ. P.
13  45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take
14  reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena
15  [and] [t]he court for the district where compliance is required must enforce this duty and impose
16  an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a
17  party or attorney who fails to comply.").

18      "Although irrelevance is not among the litany of enumerated reasons for quashing a
19  subpoena found in Rule 45, courts have incorporated relevance as a factor when determining
20  motions to quash a subpoena."  Moon, 232 F.R.D. at 637 (citing Goodyear Tire & Rubber Co. v.
21  Kirk's Tire & Auto Servicenter, 211 F.R.D. 658, 662 (D. Kan. 2003)).  Thus, in determining
22  undue burden, the Court should weigh the burden of the subpoenaed party against the requested
23  information's relevance, need of the serving party for the information, the breadth of the
24  information requested, the time period covered by the request, and the particularity with which
25  the request is made.  Moon, 232 F.R.D. at 637.

26      Generally, a party does not have standing to bring a motion to quash a subpoena that is
27  directed to a nonparty, unless the party is asserting a privilege or some other ground that
28  establishes standing.  See United States v. Tomison, 969 F. Supp. 587, 596 (E.D. Cal. 1997) ("A

4

party only has standing to move to quash the subpoena issued to another when the subpoena infringes upon the movant's legitimate interests . . . Accordingly the government lacks standing to raise the exclusive grounds for quashing the subpoena, since it lacks the sine qua non of standing, an injury in fact relative to those grounds."); California Sportfishing Prot. All. v. Chico Scrap Metal, Inc., 299 F.R.D. 638, 643 (E.D. Cal. 2014) ("The Ninth Circuit has yet to address the question of whether a party has standing to bring a motion to quash since usually only the subpoenaed non-party may move to quash. The general rule, however, is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought."). As recently explained:

> Under Federal Rule of Civil Procedure 45(a)(1)(C), a party may subpoena a nonparty to produce documents, electronically stored information, and tangible things. The court "must" quash or modify a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). The Ninth Circuit has "yet to address the question of whether a party has standing to bring a motion to quash since usually only the subpoenaed non-party may move to quash. The general rule, however, is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." California Sportfishing Prot. All. v. Chico Scrap Metal, Inc., 299 F.R.D. 638, 643 (E.D. Cal. 2014) (citing Windsor v. Martindale, 175 F.R.D. 665, 668 (D. Colo. 1997)); see also Peccia v. Dep't of Corr. & Rehab., No. 2:18-cv-3049 JAM AC, 2020 WL 2556751, at *1 (E.D. Cal. May 20, 2020) (citing California Sportfishing, 175 F.R.D. at 643); Robertson v. Catholic Cmty. Servs. of W. Washington, No. C19-1618 RSM, 2020 WL 1819842, at *5 (W.D. Wash. Apr. 10, 2020) (same). Under this general rule, plaintiff lacks standing to object to the subpoena on grounds of relevance or undue burden. Wells Fargo & Co. v. ABD Ins., No. C 12-03856 PJH DMR, 2012 WL 6115612, at *2 (N.D. Cal. Dec. 10, 2012). A party cannot seek to quash a Rule 45 subpoena except to the extent that it has "a personal right or privilege in the information sought to be disclosed." Freed v. Home Depot U.S.A., Inc., No. 18cv359-BAS (LL), 2019 WL 582346, at *2 (S.D. Cal. Feb. 13, 2019) (quoting Chevron Corp. v. Donziger, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013)).

Krenitsky v. Kirsch, No. 218CV0690WBSDBP, 2020 WL 5017270, at *1 (E.D. Cal. Aug. 25, 2020). Noted in Krenitsky, "[i]n contrast to a motion to quash, a party has standing to seek a protective order to limit discovery from a third party." Id. at *1 n.1 (citing Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc., 231 F.R.D. 426, 429 (M.D. Fla. 2005)).

The Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be . . . **(11)** pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11).

## III.

## DISCUSSION

### A.   Respondent's Motion

Respondent submits she intends to prove at the evidentiary hearing and through the sanctions motion that Petitioner knew he would be transferred to Beale Air Force Base ("Beale") several months before the actual orders issued, and that Petitioner improperly maintained this Hague Convention. Lt. Col. Mikita Brown ("Brown") was the decision maker in charge of filling the position Petitioner transferred to at Beale. (Mot. 2.)

Counsel for Respondent has been in contact with Staff Judicial Advocate Lt. Col. Rebecca E. Schmidt ("Schmidt"), regarding the appearance of Brown at the evidentiary hearing. According to Schmidt, she communicated to Respondent's counsel that she would neither consider nor render a decision regarding compliance with a subpoena issued by an attorney or a clerk of the court. (Mot. 2; Decl. Drexwell Jones Supp. Mot. ("Jones Decl.") ¶ 3, ECF No. 86-1 at 1; Ex. B, ECF No. 86-1 at 12.) As indicated by Schmidt, pursuant to U.S. Air Force Instruction AFI 51-301, para. 3.8.1.4.1 and 5 U.S.C. § 552a (the Privacy Act), consideration of the subpoena and the potential approval for attendance or release of information will only be made pursuant to an order of the court or a subpoena signed by a judge. (See Ex. C, ECF No. 86-1 at 16.)

Thus, Respondent submits she has two potential avenue to compel Brown to testify at an evidentiary hearing. First, Respondent could serve a subpoena, issued by her attorney or a clerk of the court, and wait for the September 30 hearing, however the Air Force has indicated that it will neither object nor respond in court to a subpoena so issued. (Mot. 2.) At that time, Respondent could then seek an order to show cause regarding contempt, and then the Court

6

1  could issue an order compelling Brown to appear, at which time the Air Force will consent to the
2  appearance or, Respondent proffers more likely, the Air Force will object to the order.
3  Respondent emphasizes that because Brown is an essential witness, her failure to appear would
4  result in significant delay.[1]

5  The second avenue is a subpoena issued by the Court by request. After service of such
6  subpoena, Respondent submits the Air Force will then consider the merits of the request and at
7  least confirm, one way or another, whether compliance will be recommended. (Mot. 2.)
8  Respondent proffers this appears to be the more expedient, but inconvenient method for the
9  Court, and "not entirely contemplated by FRCP Rule 45." (Mot. 2-3.)

10  Respondent requests the following documents be produced by Lt. Col. Brown in relation
11  to the subpoena to appear the evidentiary hearing:

12  1.   Any and all letters, emails, texts, or social media communications between Lt.
13  Col. Krause and Lt. Col. Brown regarding the position at Beale AFB;

14  2.   Any and all personal notes maintained by Lt. Col. Brown regarding the selection
15  of Lt. Col. Krause for the position at Beale AFB;

16  3.   Any and all documentary communications (letters, emails, texts, or social media
17  communications, etc.) between Lt. Col Brown and third parties regarding consideration of Lt.
18  Col. Krause for the position at Beale;

19  4.   Any and all documents related to Lt. Col. Krause's request to be assigned to the
20  position at Beale AFB;

21  5.   Any and all documents related to the Air Force's consideration of Lt. Col. Krause
22  for a position at Beale AFB;

23  6.   Any and all documents related to the Air Force's notification to Lt. Col. Krause
24  he was being selected for a position at Beale AFB; and

25  7.   Any and all documentary communication between Lt. Col. Krause's current

---

[1] Respondent notes in the moving papers that out of an abundance of caution, she will issue attorney-signed subpoenas to Brown and Krause in the event the Court is disinclined to issue a judge-signed subpoena. (Mot. 2 n.1.) The Court notes it somewhat assumed Respondent would have done so following the July 6, 2022 hearing. (ECF No. 85.)

commander and the receiving commander regarding Lt. Col. Krause's reassignment. (Mot. 3.)

Additionally, while Michael Krause is a party to this case, Respondent submits that she anticipates his status as an officer in the U.S. Air Force might be used to object to his appearance at the evidentiary hearing or the production of requested documents, and to ameliorate certain anticipated objections, Respondent also requests a judge-signed subpoena be issued for Lt. Col. Krause's attendance at the hearing. The documents requested as to Petitioner Michael Krause are:

1. Any and all email notifications regarding his assignment to Beale;

2. Any and all documents wherein Lt. Col. Krause made a request for a position at Beale;

3. Any and all letters, emails., texts, or social media communications between Lt. Col. Krause and Lt. Col. Brown regarding the position at Beale AFB;

4. Any and all official documents in Lt. Col. Krause's possession regarding his assignment to Beale;

5. Any and all personal notes maintained by Lt. Col. Krause regarding his assignment to Beale AFB;

6. Any and all documentary communications (letters, emails, texts, or social media communications, etc.) between Lt. Col. Krause and third parties regarding his assignment to Beale;

7. Any and all documents related to Lt. Col. Krause's request to be assigned to the position at Beale AFB;

8. Any and all documents related to the Air Force's consideration of Lt. Col. Krause for a position at Beale AFB;

9. Any and all documents related to the Air Force's notification to Lt. Col. Krause he was being selected for a position at Beale AFB; and

10. Any and all documentary communication between Lt. Col. Krause and his previous commander regarding his assignment to Beale. (Mot. 3-4.)

///

### B. The Court finds in Favor of Respondent

Under the Privacy Act, "the term 'record' means any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph." 5 U.S.C. § 552a(a)(4). "[T]he term 'system of records' means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).

Subsection (b) is entitled "Conditions of disclosure." 5 U.S.C. § 552a(b)(1). As the parties recognize as relevant to the instant motion, pursuant to the provision, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be-- . . . pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11).

In relation to that provision, the Department of Defense ("DOD") has a regulation governing disclosure of records, which requires more than a subpoena signed by an attorney or a clerk of court. 32 C.F.R. § 516.46(b)(1). In most relevant part, it provides that:

> (b) Information protected by the Privacy Act.
>
> (1) A subpoena duces tecum or other legal process signed by an attorney or clerk of court for records protected by the Privacy Act, 5 U.S.C. 552a, does not justify the release of the protected records. The deciding official should explain to the requester that the Privacy Act precludes disclosure of records in a system of records without the written consent of the subject of the records or "pursuant to the order of a court of competent jurisdiction." (See 5 U.S.C. 552a(b)(11)). An "order of the court" for the purpose of subsection 5 U.S.C. 552a(b)(11) is an order or writ requiring the production of the records, signed by a judge or magistrate.
>
> (2) Unclassified records otherwise privileged from release under 5 U.S.C. 552a may be released to the court under either of the following conditions:

> (i) The subpoena is accompanied by an order signed by a judge or magistrate, or such order is separately served, that orders the person to whom the records pertain to release the specific records, or that orders copies of the records be delivered to the clerk of court, and indicates that the court has determined the materiality of the records and the nonavailability of a claim of privilege.

32 C.F.R. § 516.46.

Respondent proffers Rule 45(a)(3) does not specifically contemplate a judge issuing a subpoena, but federal courts have issued such subpoenas in response to Privacy Act and DOD regulations. Petitioner first proffers "the records and testimony sought by Respondent, which concern his confidential communications with Airforce personnel, are clearly protected under 5 U.S.C. § 552a and cannot be disclosed without consent of Petitioner and Lt. Col. Brown." Although the provision allows for production by consent, as recognized in later arguments, there are multiple exceptions, including where pursuant to the order of a court of competent jurisdiction. As to the provision, Petitioner then argues this Court does not have authority to issue subpoenas under Section 552a(b)(11).

The Court finds support for Respondent's position, or at least that that a judge may issue an order requiring such production of documents subject to the Privacy Act, even if not in a form of a traditional "subpoena." See 5 U.S.C. § 552a(b)(11) ("pursuant to the order of a court of competent jurisdiction."); 32 C.F.R. § 516.46 ("An 'order of the court' for the purpose of subsection 5 U.S.C. 552a(b)(11) is an order or writ requiring the production of the records, signed by a judge or magistrate."). As recognized by the parties in briefing, this process is also supported by caselaw.

"Under 5 U.S.C.A. § 552a(b), government agencies can release information about individuals only under certain circumstances [and] is allowed when a court of competent jurisdiction so orders." Perry v. State Farm Fire & Cas. Co., 734 F.2d 1441, 1447 (11th Cir. 1984) (hereinafter "Perry"). The Eleventh Circuit applied a balancing test, stating "[r]equests for court orders under § 552a(b)(11) should be evaluated by balancing the need for the disclosure against the potential harm to the subject of the disclosure." Id. (citations omitted). In Perry, the court found the "balance tilt[ed] against disclosure because State Farm had no real need for the

1  Social Security Administration's testimony [and] could have utilized normal discovery
2  procedures to obtain information about the termination date from plaintiff or plaintiff's counsel,
3  who had represented the plaintiff before the Social Security Administration." Id.

4  As argued by both parties, some courts apply the Perry balancing test, or a balancing test
5  under Rule 26. Respondent argues she has sufficiently demonstrated the appropriateness of a
6  subpoena under either standard. Petitioner argues Respondent cannot meet either standard.

7  The Eastern District of Washington recently noted the split, ultimately deciding it was not
8  necessary to make a determination as to which is the appropriate standard, given there the
9  movant had not made a sufficient showing under either:

> Plaintiff Casey Clarkson moves the Court for a Rule 45 subpoena signed by a judge pursuant to 5 U.S.C. § 522a of the Privacy Act to obtain agency records held by the United States Department of Defense ("DOD") and the Defense Finance and Accounting Service ("DFAS"). ECF No. 116. Defendants do not oppose the motion. Section 522a prohibits disclosure of agency records unless such disclosure is "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 522a(b)(11). The regulations governing disclosure of records from DOD require more than a subpoena signed by an attorney or clerk of court. 32 C.F.R. § 516.46(b)(1). Instead, records will only be released upon written consent of the subject of the records or "an order or writ requiring the production of the records, signed by a judge or magistrate." *Id*. Plaintiff has not presented written consent from the subjects of the records nor has he indicated he intends to seek written consent.
>
> The caselaw on this particular issue is not robust. Courts that have addressed Rule 45 subpoenas pursuant to the Privacy Act disagree as to which standard should be applied in determining whether to issue the order. In *Perry v. State Farm Fire & Cas. Co.*, the Eleventh Circuit held "[r]equests for court orders under § 552a(b)(11) should be evaluated by balancing the need for the disclosure against the potential harm to the subject of the disclosure." 734 F.2d 1441, 1447 (11th Cir. 1984) (citation omitted). More recent courts have also applied the *Perry* balancing standard. *See, e.g., Gutierrez v. Benavides*, 292 F.R.D. 401 (S.D. Tex. 2013); *U.S. Equal Empl. Opportunity Commn. v. Rent-A-Ctr. E. Inc.*, No. 16-2222, 2017 WL 6945662 (C.D. Ill. Apr. 5, 2017). Alternatively, other courts have rejected the heightened *Perry* standard, finding the usual relevance standard of Rule 26 more appropriate. Specifically, the court in *Laxalt v. McClatchy* stated "[w]e ... find no basis for inferring that the statute replaces the usual discovery standards of the FRCP—in particular, Rules 26 and 45(b)—with a different and higher standard." 809 F.2d 885, 888-89 (D.C. Cir. 1987). *See also Broderick v. Shad*, 117 F.R.D. 306 (D.D.C. 1987); *Walker v. Sci. Applications Int'l Corp.*, 1:07-CV-1609-WTL-DML, 2010 WL

> 11561269, at *2 (S.D. Ind. May 13, 2010). However, "some substantive balancing of interests" under this standard is still proper. *Laxalt*, 809 F.2d at 890. The Ninth Circuit has not addressed the issue.
>
> Here, the Court does not find it necessary to adopt a specific standard because Plaintiff cannot meet either the relevancy standard under Rule 26 or the heightened standard under *Perry*. Rule 26 permits discovery that is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Courts have broad discretion in determining relevancy. *Goro v. Flowers Foods, Inc.*, 334 F.R.D. 275, 283 (S.D. Cal. 2018). Under the current Rule 26, which was amended in 2015, "[r]elevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case." *In re Bard IVC Filters Products Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016) (citing Fed. R. Civ. P. 26(b) Advis. Comm. Notes for 2015 Amends.).

Clarkson v. Alaska Airlines, Inc., No. 2:19-CV-0005-TOR, 2020 WL 7241055, at *1–2 (E.D. Wash. Dec. 9, 2020).

As noted above, a party generally does not have standing to bring a motion to quash a subpoena that is directed to a nonparty, unless the party is asserting a privilege or some other ground that establishes standing. See Tomison, 969 F. Supp. at 596. Petitioner recognizes the general limitations for a party to challenge a subpoena directed at a third party, and argues under the exceptions for privilege and information subject to privacy rights. (Opp'n 2-3.) The Court accepts that Petitioner has standing to oppose the current motion (or could file a motion to quash if he were challenging a subpoena already issued), particularly given and recognizing that the Privacy Act includes an option for Petitioner to request records pertaining to himself with personal consent. See 5 U.S.C. § 552a.

Before arguing under both the Perry and Rule 26 standards, Petitioner tees up the relevancy arguments under each standard by contending that Petitioner's remedy pursuant to the Hague Convention was never moot and Respondent does not have any basis to pursue sanctions because Petitioner had not moved permanently, (Opp'n 4-6). Von Kennel Gaudin v. Remis, 282 F.3d 1178, 1183 (9th Cir. 2002) ("The Convention cannot be invoked when the petitioner moves permanently to the same country in which the abductor and the children are located."); see also Witherspoon v. Orange Cnty. Dep't of Soc. Servs., 646 F. Supp. 2d 1176, 1182 (C.D. Cal. 2009), noting that the petitioner's ICARA petition seeking return of her children to Germany was moot

1  because she filed her Hague Petition after having moved to the United States and was therefore
2  "domiciled" in the United States rather than Germany).

3  Here, Petitioner argues that despite having a military order assigning him to Beale CA, Petitioner had not yet actually relocated to the United States until June 15, 2022, more than three (3) weeks after having moved to dismiss his Hague Petition. Petitioner had inquired about a new assignment because he believed it was the most prudent thing to do, given that he was unsure as to whether he would prevail in the Hague case, and although Petitioner did in fact have an order as of May 12, 2022, assigning him to California, Petitioner's plan to move to California was not yet solidified, given that "he could have requested to have his reassignment order reversed, or alternatively, he could have quit the service . . . or [a]ny number of other intervening, superseding factors could also have prevented his potential future move to California." (Opp'n 5.)

The questions of mootness and the applicability and contours of the above caselaw as applied to the facts of this case are precisely *one* of the reasons the Court finds the requested information relevant to the motions for sanctions and the motion for conditional dismissal. Further, at this juncture, the Court is not convinced the narrow issue of mootness of the Hague petition is the *only* factor relevant to the pending motions. As one small example, there may be questions involving Respondent's motion to continue the May 25, 2022 evidentiary hearing, and whether that was appropriately opposed when extensive fees and costs could have been saved, and genuine question from Respondent as to whether these were legitimate tactics given the concurrent state divorce case. Inquiries may touch upon Petitioner's motion for sanctions as well, given the issues involving whether Respondent's submission to the Court of settlement discussions were proper, when the submissions were made to demonstrated potential mootness of the claims. The Court therefore largely rejects Petitioner's argument that the testimony and records sought are not relevant to the forthcoming evidentiary hearing and the cross-motions, simply because there are potential arguments that the case was not moot under one legal theory. While a permanent move does equate to mootness under Ninth Circuit law, Petitioner has not demonstrated a permanent move must have occurred.

The Court now turns to the more specific arguments proffered under the two standards. Under the Perry standard, Petitioner argues that the balance tilts against disclosure, for Respondent has no real need for the documents and testimony requested, because Petitioner's remedies pursuant to the Hague Convention were not actually moot at any time. Again, the Court finds the information and testimony relevant for the purposes of the motions pending before the Court and for the Court to properly conduct the evidentiary hearing. See Christy v. United States, 68 F.R.D. 375 (N.D. Tex. 1975).

As to harm, Petitioner only generally argues that: "disclosure of such information is likely to be damaging to Petitioner, for details as to his personal matters are likely to be revealed during the course of his and Lieutenant Brown's testimony, as his pursuit of a reassignment to Beale AFB was undeniably intertwined with his efforts to reach a global divorce settlement with Respondent." (Opp'n 9.) However, the Court does not find this vague statement shows specific potential harm. Moreover, it appears rather to be a statement conceding the general validity of the information sought, as it pertains to information that is undeniably intertwined with his efforts to reach a global divorce settlement, and to the Court, this is one of the reasons why the information sought is relevant to both parties' cross-motions. Petitioner concludes: "[s]uch potential damage certainly does not outweigh Respondent's need to obtain such information for purposes of proving an unviable case for sanctions."[2] (Id.) The Court disagrees and finds the relevancy described herein outweighs the proffered harm. See Perry, 734 F.2d at 1447.

Next, Petitioner argues Respondent has not met the relevancy standard under Rule 26, arguing that unlike Davidovich v. Cnty. of San Mateo, Case No. 12-cv-02148-JST (N.D. Cal. Mar. 27, 2013); and Clarkson, 2020 WL 7241055, the information Respondent seeks is not at all relevant to any viable claim. Again, the Court finds Respondent has sufficiently demonstrated relevancy for the information and testimony sought, and Petitioner has not demonstrated it is irrelevant or that privacy or privilege considerations outweigh the relevancy. See Clarkson, 2020 WL 7241055 at *2 ("Plaintiff's request triggers legitimate privacy concerns, particularly where

---

[2] The Court presumes Petitioner meant to write the potential damage outweighs Respondent's need.

some of the subjects of the disclosure may not be parties to this case.").

For the reasons explained above, the Court finds Respondent's motion is appropriately granted. The Court finds Petitioner has not demonstrated specific harm that would outweigh relevance as to the cross-motions before the Court and that are the subject of the evidentiary hearing. The Court shall issue an order[3] requiring Lt. Col. Brown and Petitioner Michael Krause to appear for testimony and produce documents at the September 30, 2022 evidentiary hearing. See 5 U.S.C. § 552a(b)(11); Fed. R. Civ. P. 45(a)(1)(A); Fed. R. Civ. P. 26; Perry v. State Farm Fire & Cas. Co., 734 F.2d 1441, 1447; Clarkson v. Alaska Airlines, Inc., No. 2:19-CV-0005-TOR, 2020 WL 7241055, at *1–2 (E.D. Wash. Dec. 9, 2020). [4]

## IV.

## ORDER

Accordingly, for the reasons discussed above, IT IS HEREBY ORDERED that:

1. Respondent Tara Krause's motion (ECF No. 86) is GRANTED;

2. Petitioner Michael Krause's objections are OVERRULED;

///

///

///

///

///

---

[3] To the extent that Respondent believes a form subpoena would also be prudent to serve as well, Respondent may submit a proposed subpoena form filled out with necessary information that reflects the document requests ordered herein, and the Court will sign the subpoena form, so that Respondent may serve that form as well if Respondent believes it adds any additional authority. However, given the law above, the Court finds where the Privacy Act states such records should be produced pursuant to an order of the court, an order demanding appearance and production of witnesses and documents meet the demands of the law and regulation. See 5 U.S.C. § 552a(b)(11) ("pursuant to the order of a court of competent jurisdiction."); 32 C.F.R. § 516.46 ("An 'order of the court' for the purpose of subsection 5 U.S.C. 552a(b)(11) is an order or writ requiring the production of the records, signed by a judge or magistrate.").

[4] The Court also possesses inherent authority to impose sanctions to manage its own affairs so as to achieve the orderly and expeditious disposition of cases. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). The Court's inherent power is that which is necessary to the exercise of all others, including to protect the due and orderly administration of justice and maintain the authority and dignity of the Court. Roadway Exp., Inc. v. Piper, 447 U.S. 752, 764 (1980).

3. Lt. Col. Mikita Brown shall appear for an evidentiary hearing to be held on September 30, 2022, at 8:30 a.m., in Courtroom 9, at the United States District Court for the Eastern District of California, located at the Robert E. Coyle United States Courthouse, 2500 Tulare St, Fresno, CA 93721, and produce the following documents:

   a. Any and all letters, emails, texts, or social media communications between Lt. Col. Krause and Lt. Col. Brown regarding the position at Beale AFB;

   b. Any and all personal notes maintained by Lt. Col. Brown regarding the selection of Lt. Col. Krause for the position at Beale AFB;

   c. Any and all documentary communications (letters, emails, texts, or social media communications, etc.) between Lt. Col Brown and third parties regarding consideration of Lt. Col. Krause for the position at Beale;

   d. Any and all documents related to Lt. Col. Krause's request to be assigned to the position at Beale AFB;

   e. Any and all documents related to the Air Force's consideration of Lt. Col. Krause for a position at Beale AFB;

   f. Any and all documents related to the Air Force's notification to Lt. Col. Krause he was being selected for a position at Beale AFB; and

   g. Any and all documentary communication between Lt. Col. Krause's current commander and the receiving commander regarding Lt. Col. Krause's reassignment;

4. Petitioner Michael Krause shall appear for an evidentiary hearing to be held on September 30, 2022, at 8:30 a.m., in Courtroom 9, at the United States District Court for the Eastern District of California, located at the Robert E. Coyle United States Courthouse, 2500 Tulare St, Fresno, CA 93721, and produce the following documents:

   a. Any and all email notifications regarding his assignment to Beale;

   b. Any and all documents wherein Lt. Col. Krause made a request for a

16

      position at Beale;

  c. Any and all letters, emails., texts, or social media communications between Lt. Col. Krause and Lt. Col. Brown regarding the position at Beale AFB;

  d. Any and all official documents in Lt. Col. Krause's possession regarding his assignment to Beale;

  e. Any and all personal notes maintained by Lt. Col. Krause regarding his assignment to Beale AFB;

  f. Any and all documentary communications (letters, emails, texts, or social media communications, etc.) between Lt. Col. Krause and third parties regarding his assignment to Beale;

  g. Any and all documents related to Lt. Col. Krause's request to be assigned to the position at Beale AFB;

  h. Any and all documents related to the Air Force's consideration of Lt. Col. Krause for a position at Beale AFB;

  i. Any and all documents related to the Air Force's notification to Lt. Col. Krause he was being selected for a position at Beale AFB; and

  j. Any and all documentary communication between Lt. Col. Krause and his previous commander regarding his assignment to Beale; and

5. The hearing set for September 21, 2022, is VACATED.

IT IS SO ORDERED.

Dated: **September 19, 2022**

UNITED STATES MAGISTRATE JUDGE

17